# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2015AP1858 |
| COMPLETE TITLE: | Wisconsin Three, LLC, Voters with Facts, Leah Anderson, David Wood, Jo Ann Hoeppner Cruz, Maryjo Cohen, Janice Wnukowski, Rachel Mantik, Pure Savage Enterprises, LLC, Paul Zank, Judy Olson, Janeway Riley, J. Peter Bartl and Dorothy Westermann, Dewloc, LLC, Cynthia Burton, Corinne Charlson, Christine Webster, 215 Farwell LLC, Plaintiffs-Appellants-Petitioners, v. City of Eau Claire and City of Eau Claire Joint Review Board, Defendants-Respondents. |
| | REVIEW OF DECISION OF THE COURT OF APPEALS Reported at 376 Wis. 2d 479, 899 N.W.2d 706 PDC No: 2017 WI App 35 - Published |

| | |
|---|---|
| OPINION FILED: | June 6, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 23, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | Paul J. Lenz |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | R.G. BRADLEY, J., and KELLY, J., dissent (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Thomas C. Kamenick*, *Richard M. Esenberg*, *Brian McGrath*, and *Wisconsin Institute for Law & Liberty*, Milwaukee. There was an oral argument by *Richard M. Esenberg*.

For the defendants-respondents, there was a brief filed by *Douglas Hoffer*, assistant city attorney, and *Stephen C. Nick*, city attorney, with whom on the brief was *Remzy D. Bitar* and

*Arenz*, *Molter*, *Macy*, *Riffle & Larson S.C.*, Waukesha. There was an oral argument by *Douglas Hoffer.*

An amicus curiae brief was filed on behalf of Eau Claire Area Chamber of Commerce, Inc. by *Ryan J. Steffes* and *Weld Riley*, *S.C.*, Eau Claire.

An amicus curiae brief was filed on behalf of Wisconsin REALTORS Association, NAIOP-WI, and the Wisconsin Economic Development Association by *Thomas D. Larson* and *The Wisconsin REALTORS Association*, Madison.

An amicus curiae brief was filed on behalf of League of Wisconsin Municipalities, City of Milwaukee, City of Madison, and Wisconsin Towns Association by *Claire Silverman* and *League of Wisconsin Municipalities*, Madison, with whom on the brief were *Mary L. Schanning*, deputy city attorney of Milwaukee; *Gregg C. Hagopian*, assistant city attorney of Milwaukee; *Grant F. Langley*, city attorney of Milwaukee; *Michael May*, city attorney of Madison; and *Rick Manthe* and *Wisconsin Towns Association*, Shawano.

An amicus curiae brief was filed on behalf of the State of Wisconsin by *Misha Tseytlin*, solicitor general, *Brad D. Schimel*, attorney general, and *Kevin M. LeRoy*, deputy solicitor general. There was an oral argument by *Misha Tseytlin.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1858
(L.C. No. 2015CV175)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Voters with Facts, Pure Savage Enterprises, LLC, Wisconsin Three, LLC, 215 Farwell LLC, Dewloc, LLC, Leah Anderson, J. Peter Bartl, Cynthia Burton, Corinne Charlson, Maryjo Cohen, Jo Ann Hoeppner Cruz, Rachel Mantik, Judy Olson, Janeway Riley, Christine Webster, Dorothy Westermann, Janice Wnukowski, David Wood and Paul Zank,**

        **Plaintiffs-Appellants-Petitioners,**

    **v.**

**City of Eau Claire and City of Eau Claire Joint Review Board,**

        **Defendants-Respondents.**

**FILED**

**JUN 6, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1    ANNETTE KINGSLAND ZIEGLER, J.    This case arises out of the approval of a redevelopment project in the City of Eau Claire (the "City"), which relied in part on funds derived from two tax incremental districts ("TIDs"): TID 8 and TID 10.

Voters with Facts, et al.[1] ("Plaintiffs") challenged the legality of the City's actions with regard to these TIDs. We review here a published decision of the court of appeals, <u>Voters with Facts v. City of Eau Claire</u>, 2017 WI App 35, 376 Wis. 2d 479, 899 N.W.2d 706 [hereinafter <u>Voters</u>], affirming the Eau Claire County circuit court's[2] dismissal of Plaintiffs' complaint as to declaratory judgment, but reversing and remanding as to certiorari review.

¶2 The expansion or creation of TIDs is limited to one of four purposes: addressing blighted areas, urban rehabilitation or conservation, industrial development, or the promotion of mixed-use development. Wis. Stat. § 66.1105(4)(gm)4.a. (2013-14).[3] Where a municipality seeks to expand or create a TID, it must resolve to do so for one of these purposes. <u>Id.</u> Here, the City's declared purpose was to address blight, and, to support that purpose, the City's local legislative body had to find, among other things, that "[n]ot less than 50%, by area, of the real property within the district is . . . a blighted area." <u>Id.</u> A TID must also be approved by a joint review board ("JRB"), which must find, among other things, that "in its

---

[1] There are 19 plaintiffs total: 4 LLCs, 14 individuals, and Voters with Facts——"an unincorporated association of grassroots citizen volunteers and Eau Claire taxpayers who question the propriety of the proposed developments."

[2] The Honorable Paul J. Lenz presided.

[3] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

judgment, the development . . . would not occur without the creation of a [TID]." § 66.1105(4m)(b)2. In their complaint, Plaintiffs did not dispute that the appropriate bodies stated the appropriate findings, but rather alleged that the findings were "neither supported by record evidence nor factually correct." Additionally, Plaintiffs alleged that the City's disbursement of cash grants to the developer for "project costs" was unlawful because it amounted to an unconstitutional tax rebate and/or because the developer could apply the cash grants to reimburse itself for already-incurred costs of demolishing historic buildings, contrary to § 66.1105(2)(f)1.a. Plaintiffs sought declaratory relief on these claims, but argued in the alternative that, under certiorari review, the City had acted outside the scope of its lawful authority.

¶3 The circuit court dismissed Plaintiffs' complaint because it found that they lacked standing. The court of appeals affirmed in part and reversed in part, remanding with instruction. Voters, 376 Wis. 2d 479, ¶¶2, 4. The court of appeals affirmed the circuit court's dismissal of Plaintiffs' complaint as to declaratory judgment because it agreed that Plaintiffs lacked standing. See id., ¶26 (findings); id., ¶39 (project costs); id., ¶48 (uniformity clause). It reversed and remanded for certiorari review, however, because the circuit court had not directly addressed that claim. Id., ¶¶35, 60.

¶4 On review, we consider two issues. First, we consider whether dismissal of Plaintiffs' declaratory judgment claims was proper. We conclude that it was, because Plaintiffs have failed

to state claims upon which relief can be granted: the first and second counts fail because the City Common Council's findings of blight and the JRB's "but for" assertions are legislative determinations that do not present justiciable issues of fact or law; the third count fails because it does not allege facts which plausibly establish that the City's cash grant for TID 10 was used to reimburse the developer's costs associated with demolishing historic buildings; and the fourth count fails because it does not allege facts which plausibly establish that cash grants are intended or used to pay owner-developers' property taxes.

¶5 Second, we consider whether certiorari review is appropriate. We conclude that it is, because certiorari review is the appropriate mechanism for a court to test the validity of a legislative determination. The record before us, however, does not contain a municipal record sufficient to enable our review. Accordingly, we remand to the circuit court for certiorari review of Plaintiffs' first and second claims.

¶6 Thus, we affirm the decision of the court of appeals on other grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶7 As noted above, this case arises out of the approval of a redevelopment project (the "Confluence Project") in downtown Eau Claire. The Confluence Project relied in part on tax incremental financing ("TIF") derived from the City's expansion of the already-existing TID 8 and its creation of

4

TID 10,[4] both of which were endorsed by the City Planning Commission on August 18, 2014.

¶8   On September 9, 2014, the City Common Council adopted a resolution approving the expansion of TID 8.   In its resolution, the City Common Council stated that "not less than 50%, by area, of the real property within the amended boundary area of the District is a 'blighted area' and is in need of 'rehabilitation or conservation' within the meaning of Section 66.1105(2)(a)1 of the Wisconsin Statutes."   On September 26, 2014, the JRB approved the resolution.   In its approval, the JRB stated that "the development described in the Amendment [to TID #8] would not occur without the amendment."[5]   (Alteration in original.)

¶9   On October 14, 2014, the City Common Council adopted a resolution approving the creation of TID 10.   In its resolution,

_____

[4] When a city approves tax incremental financing, the property owners within the boundaries of the tax incremental district continue to pay the same rate of property tax, and the city allocates a portion of that tax revenue to finance the approved development project.   As property values rise——presumably due to the public improvements financed by the TIDs——property owners will pay a higher amount of property tax commensurate with the incremental increase in value of their property.   This value increment——the difference between taxes paid before and taxes paid as property values rise——is what the City ultimately uses to pay for the public improvements.   See City of Hartford v. Kirley, 172 Wis. 2d 191, 198-200, 493 N.W.2d 45 (1992).

[5] Neither the City Common Council's resolution approving the expansion of TID 8, nor the JRB's approval of that resolution, are in the record, but the Plaintiffs' complaint alleges that these statements were contained in those documents.

the City Common Council stated that "not less than 50%, by area, of the real property within the amended boundary area of the District is a 'blighted area' and is in need of 'rehabilitation or conservation' within the meaning of Section 66.1105(2)(a)1 of the Wisconsin Statutes." On October 22, 2014, the JRB approved the resolution. In its approval, the JRB stated that "the development described in the Project Plan would not occur without the creation [presumably of TID #10]."[6] (Alteration in original.)

¶10 Open public hearings were held prior to the decisions of the Planning Commission and the City Common Council,[7] at which "numerous city residents, including many of the Plaintiffs, spoke out against the TIDs." On March 12, 2015, Plaintiffs filed a complaint seeking declaratory relief on four claims.

¶11 The first and second claims (regarding TID 8 and TID 10, respectively) challenged the validity of the City's findings of blight under Wis. Stat. § 66.1105(4)(gm)4.a. and the JRB's "but for" findings under Wis. Stat. § 66.1105(4m)(b)2. With regard to the City's findings, Plaintiffs alleged that the City was "required to articulate the basis for its finding and the evidence of record that supports its action," and that, although

---

[6] Neither the City Common Council's resolution approving the creation of TID 10, nor the JRB's approval of that resolution, are in the record, but the Plaintiffs' complaint alleges that these statements were contained in those documents.

[7] The minutes from these public hearings are not in the record before the court.

the City's resolution "contains a conclusory assertion that 'not less than 50%, by area, of the real property within the amended boundary area of the [TID] is a "blighted area,"'" the City "did not articulate the factual basis for this conclusory statement and the record before the [City] contains no evidence to support its assertion." With regard to the JRB's findings, Plaintiffs alleged that the JRB could not have "reasonably concluded on the record evidence that the development would not occur in the [TID] without tax incremental financing." Plaintiffs thus argued that the TIDs lacked a public purpose in violation of the public purpose doctrine and sought a declaration that the authorization and implementation of the TIDs was "invalid, void, and of no force and effect."

¶12 The third claim challenged the validity of the City's disbursement of cash grants pursuant to the project plan for TID 10. Plaintiffs alleged that "the development agreement does not clearly provide that the [] developer may not use the lump sum payments to reimburse itself for the costs of demolishing [historic] properties," and that, "[g]iven the lump sum character of the developer payments, there is in fact no way to assure [how] the payments have been used." Plaintiffs thus argued that the cash grants violated Wis. Stat. § 66.1105(2)(f)1.a.——which excludes "destruction of [historic] properties" from the definition of "project costs"——because the project plan "unlawfully reimburses the developer for [demolishing historic properties]," and sought a declaration

7

that the implementation of TID 10 was "invalid, void, and of no force and effect."

¶13 The fourth claim also challenged the validity of the City's disbursements of cash grants pursuant to the project plan for TID 10.[8] Plaintiffs alleged that the cash grants function "as [a] tax rebate or tax credit" because the developer, who is also the "owner of taxable property[,] is given substantial cash payments, effectively reimbursing the owner[-developer] (in advance) for all or a part of the taxes paid on its property." Plaintiffs thus argued that the cash grants violate the Uniformity Clause of the Wisconsin Constitution because the owner-developer "is being taxed at a more favorable rate than an owner of identically-assessed property elsewhere in Eau Claire," and sought a declaration that the creation of TID 10 was "unlawful, void, and of no force and effect."

¶14 Plaintiffs asserted certiorari review as an alternative basis for relief, "[i]f for any reason [they] are not entitled to declaratory relief." On this fifth claim, Plaintiffs argue that, "[f]or the reasons set forth above, the

---

[8] The complaint is not clear as to whether this challenge is raised against both TIDs or just TID 10. The heading for the fourth claim states that it seeks "Declaratory Judgment relating to both TIDs," but the final paragraph requests only that "the Resolution creating TID #10 [be declared] . . . unlawful, void, and of no force and effect." Because we conclude that the claim fails to state a claim upon which relief can be granted, this discrepancy in the record does not affect our analysis.

[actions] of the [City and the JRB] [were] arbitrary, capricious, and outside the scope of their lawful authority."

¶15 On April 9, 2015, the City filed its answer, denying in relevant part Plaintiffs' allegations.  The City also asserted a number of affirmative defenses, including that "Plaintiffs' complaint contains claims which may fail to state a claim upon which relief may be granted," and that "[o]ne or more plaintiffs may lack capacity to sue or standing and one or more of the claims may be unripe or moot."  On May 22, 2015, the City filed a motion to dismiss, which more fully articulated its challenges to the viability of Plaintiffs' complaint.

¶16 In general, the City argued that Plaintiffs lacked standing because the claims were highly speculative, did not allege any direct pecuniary loss, and were not ripe.  More specifically, the City argued that Plaintiffs' first and second claims fail because they do not allege "that there can be no benefit to the public . . . which the Plaintiffs must demonstrate to prove a lack of public purpose"; Plaintiffs' third claim fails because the "'anything's possible' allegations are not sufficient" and are moot in any event "because the buildings in question have already been demolished"; and Plaintiffs' fourth claim fails because it is a facial constitutional challenge to a law that has already been held to be constitutional. Additionally, even assuming Plaintiffs have standing, the City argued that declaratory judgment was not the

proper method for reviewing the creation or expansion of TIDs, which is limited to certiorari.[9]

¶17 The circuit court agreed.  On August 17, 2015, the circuit court ruled from the bench and dismissed Plaintiffs' complaint for lack of standing under the declaratory judgment standard.[10]  It concluded that "none of the plaintiffs . . . allege a legally protect[a]ble interest" because they "allege no particular pecuniary loss attributable to them except a speculative possibilit[y] that general tax revenues could be affected."  The circuit court further concluded that the issue was not ripe because the alleged harms were highly speculative, and because it concluded that "the determination of blight is legislative and is, in essence, a political question."  In this regard, it determined that "[t]here is a lack of judicially discoverable and manageable standards," it is impossible to decide the matter "without an initial policy determination of a kind that is clearly not for judicial discretion," and "the court's undertaking an independent resolution of this matter would express a lack of

---

[9] On June 22, 2015, Plaintiffs filed their response.  On July 2, 2015, the City filed its reply.  On July 16, 2015, the circuit court held a hearing on the motion.

[10] There are four prerequisites a party must satisfy to seek declaratory relief: (1) a justiciable controversy must exist; (2) the controversy must be between persons whose interests are adverse; (3) the plaintiff must have a legally protectable interest in the controversy; and (4) the issue must be ripe for determination.  See Loy v. Bunderson, 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982).

respect due to coordinate branches of government." On August 28, 2015, the circuit court's order dismissing Plaintiffs' complaint was filed. Plaintiffs appealed.

¶18 On May 31, 2017, the court of appeals affirmed in part and reversed in part, remanding for further proceedings on Plaintiffs' certiorari claim. Voters, 376 Wis. 2d 479, ¶¶2, 4. The court of appeals affirmed the circuit court's dismissal of Plaintiffs' first four claims because it agreed that Plaintiffs lacked taxpayer standing. In this regard, it stated that "the alleged unlawful expenditure of public funds, if otherwise sufficient to survive a motion to dismiss, is sufficient to support taxpayer standing." Id., ¶17 (citing S.D. Realty Co. v. Sewerage Comm'n of City of Milwaukee, 15 Wis. 2d 15, 22, 112 N.W.2d 177 (1961)). It thus concluded that, "[a]scertaining whether [Plaintiffs have] standing . . . turns on whether those claims adequately allege the unlawful expenditure of public funds." Id., ¶18.

¶19 As to the first and second claims, the court of appeals concluded that Plaintiffs did not adequately plead the unlawful expenditure of public funds because the plain language of Wis. Stat. §§ 66.1105(4)(gm)4.a. and 66.1105(4m)(b)2. is procedural, not substantive, and therefore requires only that the City and the JRB "assert the requisite findings." Id., ¶25. Thus, "even assuming a neutral factfinder would conclude there was an inadequate factual basis . . . [that] alone do[es] not support [Plaintiffs'] allegation that those bodies failed to follow the statutory procedure for creating a TID." Id., ¶26.

11

The court of appeals concluded, however, that these findings[11] may be challenged through certiorari review, id., ¶¶28 n.9, 35, and that, if the findings were "without a substantial basis in the evidence, or [were] arbitrary and unreasonable (or otherwise contrary to law), then the creation/amendment of the TIDs [was] not only an unlawful act, but also unconstitutional as lacking a valid public purpose," id., ¶59. It thus remanded to the circuit court for certiorari review of the City's and the JRB's findings.[12] Id., ¶60.

¶20 As to the third claim, the court of appeals concluded that Plaintiffs did not adequately plead the unlawful expenditure of public funds because the "sum total" of their allegations "fail[ed] to allege that anything unlawful has occurred, or is even likely to occur." Id., ¶38. Thus, Plaintiffs' "alleged injury is far too speculative to create a plausible claim for relief." Id., ¶39.

¶21 As to the fourth claim, the court of appeals concluded, as a preliminary matter, that Plaintiffs' allegations "constitute[] a facial challenge to the constitutional validity of payments authorized by Wis. Stat. § 66.1105(2)(f)2.d."

---

[11] The court of appeals agreed with the circuit court that these findings are acts of legislative discretion. Voters, 2017 WI App 35, ¶30, 376 Wis. 2d 479, 899 N.W.2d 706.

[12] The court of appeals noted that "[t]ypically, this court determines for itself whether a plaintiff has adequately stated a claim for certiorari relief and whether the plaintiff should prevail on the merits of his or her claim," but remanded because the parties agreed that remand was more appropriate. Id., ¶60.

12

because Plaintiffs assert that "in all instances, payments from a city to an authorized entity 'effectively reimburs[e] the owner (in advance) for all or a part of the taxes paid on its property.'" Id., ¶47. The court of appeals then concluded that Plaintiffs did not adequately plead the unlawful expenditure of public funds because limiting the cash grants to reimbursement for "project costs" is a "significant and material restriction [that] compels us to conclude this case presents no issue regarding uniformity that has not already been settled by our supreme court." Id., ¶54 (citing Sigma Tau Gamma Fraternity House Corp. v. City of Menomonie, 93 Wis. 2d 392, 412, 288 N.W.2d 85 (1980), and State ex rel. La Follette v. Torphy, 85 Wis. 2d 94, 108, 270 N.W.2d 187 (1978)). In this regard, the court of appeals noted that Plaintiffs' "characterization of the payments as unlawful tax rebates or credits . . . are mere legal conclusions, which we need not accept." Id. (citing Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693). Thus, it concluded that Plaintiffs have "failed to state a cognizable claim." Id., ¶48. Plaintiffs petitioned for review.

¶22 On October 2, 2017, we granted Plaintiffs' petition for review.[13]

---

[13] At the same time that the petition for review was granted, motions for discovery and for disqualification of Justice Kelly were denied.

13

## II. STANDARD OF REVIEW

¶23 "Whether a complaint states a claim upon which relief can be granted is a question of law for our independent review." Data Key Partners, 356 Wis. 2d 665, ¶17.

## III. ANALYSIS

¶24 On review, we consider two issues. First, we consider whether dismissal of Plaintiffs' declaratory judgment claims was proper. We conclude that it was, because Plaintiffs have failed to state claims upon which relief can be granted: the first and second counts fail because the City Common Council's findings of blight and the JRB's "but for" assertions are legislative determinations that do not present justiciable issues of fact or law; the third count fails because it does not allege facts which plausibly establish that the City's cash grant for TID 10 was used to reimburse the developer's costs associated with demolishing historic buildings; and the fourth count fails because it does not allege facts which plausibly establish that cash grants are intended or used to pay owner-developers' property taxes.

¶25 Second, we consider whether certiorari review is appropriate. We conclude that it is, because certiorari review is the appropriate mechanism for a court to test the validity of a legislative determination. The record before us, however, does not contain a municipal record sufficient to enable our review. Accordingly, we remand to the circuit court for certiorari review of Plaintiffs' first and second claims.

14

### A.  Standing

¶26 The circuit court's and court of appeals' decisions relied on standing as grounds for dismissal.  Here, we analyze Plaintiffs' complaint to determine whether it states a claim upon which relief may be granted.  See State v. Castillo, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").  In doing so, we assume without deciding that Plaintiffs had standing to bring their claims.

### B.  Failure To State A Claim

¶27 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint."  Data Key Partners, 356 Wis. 2d 665, ¶19.  "[T]he sufficiency of a complaint depends on [the] substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled."  Id., ¶31.  In determining whether a complaint sufficiently alleges a claim upon which relief may be granted,[14] we accept as true all facts pled and the reasonable

---

[14] This standard is derived from Wis. Stat. § 802.02(1), which states, in relevant part, as follows:

> Contents of pleadings.  A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:

(continued)

15

inferences therefrom; we do not, however, accept as true any legal conclusions stated in the complaint. Id., ¶19. "Therefore, it is important for a court considering a motion to dismiss to accurately distinguish pleaded facts from pleaded legal conclusions." Id.

1. Findings under Wis. Stat. § 66.1105(4)(gm)4.a.

a. The substantive law

¶28 Wisconsin Stat. § 66.1105(4) states, in relevant part, as follows:

> Creation of tax incremental districts and approval of project plans. In order to implement the provisions of this section, the following steps and plans are required: . . .
>
> (gm) Adoption by the local legislative body of a resolution which: . . .
>
> 4. Contains findings that:
>
> a. Not less than 50%, by area, of the real property within the district is at least one of the following: a blighted area . . . .

§ 66.1105(4)(gm)4.a. The term "blighted area" is defined, in relevant part, as follows:

> An area, including a slum area, in which the structures, buildings or improvements, which by reason of dilapidation, deterioration, age or obsolescence,

---

> (a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

§ 802.02(1)(a).

inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of these factors is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare.

§ 66.1105(2)(ae)1.a.

b.  The allegations in Plaintiffs' complaint

¶29 With regard to this claim, Plaintiffs' complaint alleged the following facts:

29.  The City and the JRB created TID #10 and amended and expanded TID #8 exclusively for the alleged purpose of addressing blighted areas.  None of the three remaining statutory purposes for creating a TID were invoked in connection with or stated by the city or the JRB to be the basis for the creation of TID #10 or the amendment to TID #8.

51.  On September 9, 2014, the City Common Council voted 8-3 to adopt a resolution approving Amendment No. 3 to TID #8.

58.  [O]n October 14, 2014, the City Council voted 7-3 to adopt a Resolution approving the creation of TID #10.

72.  The Resolution adopted by the City Council approving Amendment No. 3 to TID #8 contains a conclusory assertion that "not less than 50%, by area, of the real property within the amended boundary area of the District is a 'blighted area.'"  The City Council did not articulate the factual basis for this conclusory statement and the record before the City Council contains no evidence to support its assertion.

83.  The resolution adopted by the City Council approving TID #10 contains a conclusory assertion that "not less than 50%, by area, of the real property within the boundary area of the District is a 'blighted area' and is in need of 'rehabilitation or conservation' . . . ."  The City Council did not

17

articulate the factual basis for this conclusory statement and the record before the City Council contains no evidence to support its assertion.[15]

c. These allegations are insufficient to state a claim upon which relief may be granted.

¶30 To determine whether the allegations are sufficient to state a claim upon which relief may be granted, we must interpret the statute; specifically, we must determine what the statute means when it requires that the local legislative body adopt a "resolution which . . . [c]ontains findings." Wis. Stat. § 66.1105(4)(gm)4. The interpretation of a statute is a question of law that we review de novo. See, e.g., Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759.

¶31 Plaintiffs argue that the areas in question were not actually blighted and that, "when the legislature established

---

[15] These allegations span the first and second claims of Plaintiffs' complaint, which address TID 8 and TID 10, respectively. With regard to both claims, Plaintiffs' complaint also alleged several legal conclusions: (1) that, under Wis. Stat. § 66.1105(4)(gm)4.a., the City Common Council "was required to make a finding that '[n]ot less than 50%, by area, of the real property within the district is . . . a blighted area'"; (2) that "to properly make such a 'finding' the City Council is required to articulate the basis for its finding and the evidence of record that supports its action"; (3) that "the City Council could not reasonably have concluded that the area was blighted"; and (4) that, if a TID "does not actually serve to eliminate blight, it lacks a public purpose and therefore represents an unconstitutional expenditure of public funds." We disregard Plaintiffs' legal conclusions because "legal conclusions stated in the complaint are not accepted as true, and [] are insufficient to enable a complaint to withstand a motion to dismiss." Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693.

18

conditions for diverting tax money for the benefit of private parties, it intended to permit such diversion only where those conditions actually exist." In this regard, Plaintiffs argue that "[c]ourts are more than capable of evaluating a factual determination made by a municipal body," and "no Wisconsin court has ever held that declaratory judgment actions may not be used to challenge" TIDs. Moreover, they argue that where "the TIDs do not in fact work to eliminate blight, they lack a public purpose and are unconstitutional."[16] The City argues that the determination of blight is a legislative act and that Plaintiffs "failed to plead sufficient facts to satisfy the bedrock separation-of-powers principle that challenges to state and local legislative acts should not be resolved by the judicial process if they are 'fairly debatable.'" In this regard, "[l]egislative acts enjoy a high level of judicial deference" and the complaint "does not demonstrate the duly authorized City Council . . . [determinations] were clearly in error." Moreover, the complaint "does not demonstrate it is 'clear and palpable that there can be no benefit to the public'"; thus, Plaintiffs have not stated a claim for violation of the public

---

[16] The public purpose doctrine is the rule that "there can be no expenditure of public funds for a private purpose." State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 48, 205 N.W.2d 784 (1973) (quoting State ex rel. Singer v. Boos, 44 Wis. 2d 374, 381, 171 N.W.2d 307 (1969)). "No specific clause in the constitution establishes the public purpose doctrine. However, it is a well-established constitutional tenet." Id. at 47-48.

purpose doctrine.  We conclude that Plaintiffs' complaint was properly dismissed as to declaratory judgment on this issue because the City Common Council's findings of blight are legislative determinations that do not present justiciable issues of fact or law.

¶32 "[S]tatutory interpretation begins with the language of the statute."  State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  Here, the statute states, in relevant part, as follows:

> In order to implement the provisions of this section, the following steps and plans are required: . . . Adoption by the local legislative body of a resolution which . . . [c]ontains findings that . . . [n]ot less than 50%, by area, of the real property within the district is at least one of the following: a blighted area . . . .

Wis. Stat. § 66.1105(4)(gm)4.a.  "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."  Wis. Stat. § 990.01(1); see also Kalal, 271 Wis. 2d 633, ¶45; Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69-77 (2012) ("Ordinary-Meaning Canon").

¶33 "Findings" is not a defined term in the statute.  The word "findings" is also not defined in Black's Law Dictionary, which instead refers the reader to the following entry for "finding of fact": "A determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record . . . ."  Finding of fact Black's Law Dictionary 749

20

(10th ed. 2014). Given this ordinary meaning of "findings", the plain language of the statute does not require that the local legislative body——here, the City Common Council——itemize the evidence in the record that supports its finding of blight.

¶34 This plain language interpretation is supported by the context of surrounding and closely-related statutes. See Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; . . . in relation to the language of surrounding or closely-related statutes."). In a closely-related statute, the legislature has demonstrated that it is fully capable of specifying when findings of blight must be explained by itemized evidence. See Wis. Stat. § 32.03(6)(c)4. Chapter 32 governs the acquisition of condemned property vis-à-vis eminent domain, including municipal acquisition of blighted properties under chapter 66. See, e.g., Wis. Stat. § 66.1331(4)(a)3., (4)(b); Wis. Stat. § 66.1333(5)(a)3., (5)(b)1. Section 32.03(6) limits this method of acquiring blighted properties by requiring that "the condemnor shall make written findings and provide a copy of the findings to the owner of the property. The findings shall include . . . [a] finding that the owner's property is blighted and the reasons for that finding." § 32.03(6)(c)4. (emphasis added). Thus, the legislature is fully capable of specifying when the reasons underlying a finding of blight must be given, and we should not read into Wis. Stat. § 66.1105(4)(gm)4.a. such a requirement where it is not specified. See Scalia & Garner,

21

supra ¶32 at 93 ("Nothing is to be added to what the text states or reasonably implies.").

¶35  This interpretation is reinforced by the surrounding blight-elimination statutes in chapter 66.  For example, Wis. Stat. § 66.1331, commonly known as the "Blighted Area Law," requires only "the adoption of a resolution by the local legislative body declaring the area to be a blighted area in need of redevelopment."  § 66.1331(5)(b)1.  Similarly, Wis. Stat. § 66.1333, commonly known as the "Blight Elimination and Slum Clearance Act," requires only "the adoption by the local legislative body of a resolution declaring in substance that there exists within the city a need for blight elimination, slum clearance and urban renewal programs and projects." § 66.1333(3)(a)2.[17]  Here, Wis. Stat. § 66.1105, commonly known as the "Tax Increment Law," requires only the "[a]doption by the local legislative body of a resolution which . . . [c]ontains findings that . . . [n]ot less than 50%, by area, of the real property within the district is . . . a blighted area."

---

[17] In addition to chapters 32 and 66, "blight" is discussed in chapter 30, relating to the construction, repair, or maintenance of harbor improvements, see Wis. Stat. §§ 30.121(3w)(b), 30.30(3)(b); in chapter 60, relating to the miscellaneous powers of town housing authorities, see Wis. Stat. § 60.23(27); in chapter 67, relating to the procedure for issuing bonds to finance the elimination of blight, see Wis. Stat. § 67.05(5)(b); and in chapter 292, relating to exemptions for local government units from hazardous waste contamination penalties and requirements for properties acquired for the purpose of blight elimination, see Wis. Stat. §§ 292.11(9)(e)1m.(d), 292.23(2)(d), 292.26(2)(d).

22

§ 66.1105(4)(gm)4.a. Thus, the blight-elimination provisions in chapter 66 are all similar in that none of them require a specified rationale or itemization of supporting evidence.

¶36 Moreover, and perhaps more importantly, this interpretation is reasonable because findings of blight are legislative determinations that "do[] not raise justiciable issues of fact or law." Joint Sch. Dist. No. 1 v. State Appeal Bd., 56 Wis. 2d 790, 794, 203 N.W.2d 1 (1973). In Wis. Stat. § 66.1105, "blighted area" means:

> An area, including a slum area, in which the structures, buildings or improvements, which by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of these factors is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare.

§ 66.1105(2)(ae)1.a. And this is substantially similar to the definition of "blighted area" in all of the blight-elimination statutes:

> "Blighted area" means any area, including a slum area, in which a majority of the structures are residential or in which there is a predominance of buildings or improvements, whether residential or nonresidential, and which, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of these factors, is conducive to ill health, transmission of disease, infant mortality,

23

juvenile delinquency and crime, and is detrimental to the public health, safely, morals or welfare.

Wis. Stat. § 66.1331(3)(a).

"Blighted area" means . . . [a]n area, including a slum area, in which there is a predominance of buildings or improvements, whether residential or nonresidential, which by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors id conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare.

Wis. Stat. § 66.1333(2m)(b)1.

¶37 The key language in each of these statutes is that the "area," in its current state, "is detrimental to the public health, safety, morals, or welfare." "Public safety, public health, [and] morality . . . are some of the more conspicuous examples of the traditional application of the police power to municipal affairs," Berman v. Parker, 348 U.S. 26, 32 (1954), and a "municipality's exercise of its police power has traditionally been accorded deference by reviewing courts." Nowell v. City of Wausau, 2013 WI 88, ¶46, 351 Wis. 2d 1, 838 N.W.2d 852. "It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable." Id.[18]

---

[18] Legislative exercise of the police power is delegable, and its delegation to cities regarding matters of redevelopment has been upheld against constitutional attack on numerous occasions. See, e.g., David Jeffrey Co. v. City of Milwaukee, 267 Wis. 559, 590, 66 N.W.2d 362 (1954).

(continued)

24

¶38 When exercised, the police power "may, indeed, seem harsh in its exercise, [and] usually is on some individual." Id. The act of condemnation for the purpose of eliminating blight is no exception: "to condemn unoffending property . . . is repugnant to the concept of the fundamental right of private property." David Jeffrey Co. v. City of Milwaukee, 267 Wis. 559, 585, 66 N.W.2d 362 (1954). "[B]ut the imperative necessity for [the police power] precludes any limitation upon it when not exerted arbitrarily." Nowell, 351 Wis. 2d 1, ¶46. In this regard, it must also be remembered that "the law is directed against slum and blighted areas, not individual structures," David Jeffrey Co., 276 Wis. at 585, and that "the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch."[19] Berman, 348 U.S. at 35-36; see also David Jeffrey

---

Here, by its enactment, the legislature has declared the policy and fixed the standards for the administration of the law. . . . It defines blighted area. It gives to cities the responsibility of determining the size of an area to be redeveloped, the costs involved and the details of the redevelopment plan, the method and mechanics of clearance, and the determination of future uses. Obviously, the legislature could not make specific provisions for all of these items, for the very reason that the size, extent, and character of the blighted areas, and the plans for redevelopment, differ in each city where the slum and blight condition exists.

Id. See also Hammermill, 58 Wis. 2d at 57-59.

[19] In fact, Wis. Stat. § 66.1331 explicitly states:

(continued)

25

Co., 267 Wis. at 578 ("The use of all property is subject to the police power of the state, to be exercised for the protection of the health, safety, and general welfare of the public, either

---

Findings and declaration of necessity. It is found and declared that there have existed and continue to exist in citied within the state, substandard, insanitary, deteriorated, slum and blighted areas which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and welfare of the residents of the state. The existence of these areas contributes substantially and increasingly to the spread of disease and crime . . . constitutes an economic and social liability, substantially impairs or arrests the sound growth of cities, and retards the provision of housing accommodations. This menace is beyond remedy and control solely by regulatory process in the exercise of the police power and cannot be dealt with effectively by the ordinary operations of private enterprise without the aids provided in this section. The acquisition of property for the purpose of eliminating substandard, insanitary, deteriorated, slum or blighted conditions or preventing recurrence of these conditions in the area, the removal of structures and improvement of sites, the disposition of the property for redevelopment incidental to these activities, and any assistance which may be given by cities or any other public bodies, are public uses and purposes for which public money may be expended and the power of eminent domain exercised. The necessity in the public interest for the provision of this section is declared as a matter of legislative determination.

§ 66.1331(2); see also Wis. Stat. § 66.1333(2). The fact that these specific legislative findings are absent from Wis. Stat. § 66.1105 does not surprise us, or cause us concern, however, because the Tax Increment Statute simply enables municipalities to work with private parties on public improvements it would otherwise be authorized to undertake itself under §§ 66.1331 and 66.1333.

directly or through subordinate agencies to whom the exercise of such prerogative may be entrusted.").

¶39 "Legislative determination[s] of public policy questions [do] not raise justiciable issues of fact or law." Joint Sch. Dist. No. 1, 56 Wis. 2d at 794; see also Buhler v. Racine Cty., 33 Wis. 2d 137, 146, 146 N.W.2d 403 (1966) ("However, since zoning is a legislative function, judicial review is limited and judicial interference restricted to cases of abuse of discretion, excess of power, or error of law."). This is because de novo review of a legislative determination violates the doctrine of separation of powers. See Joint Sch. Dist. No. 1, 56 Wis. 2d at 795; Buhler, 33 Wis. 2d at 147 ("[T]he court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization."); see also Bisenius v. Karns, 42 Wis. 2d 42, 53-54, 165 N.W.2d 377 (1969) ("[O]nce within the area of proper exercise of police power, it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety.").  Therefore, a finding of blight under Wis. Stat. § 66.1105(4)(gm)4.a. is not susceptible to an action for declaratory judgment because, as a legislative determination, it does not give rise to justiciable issues of fact or law.[20]

---

[20] We note the dissent's focus on our discussion of Joint School Dist. No. 1 v. State Appeal Bd., 56 Wis. 2d 790, 203 N.W.2d 1, and Buhler v. Racine Cty., 33 Wis. 2d 137, 146 N.W.2d 403 (1966)——which we cite for the broad proposition that legislative findings, in general, do not raise justiciable
(continued)

27

¶40 Thus, Plaintiffs have failed to state claims upon which relief may be granted because a court cannot issue a declaration regarding the wisdom of a legislative determination. See, e.g., Aicher v. Wis. Patients Compensation Fund, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849 ("It is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement."); Gottlieb v. City of Milwaukee, 33 Wis. 2d 408, 415, 147 N.W.2d 633 (1967) ("We are not concerned with the wisdom of what the legislature has done."); Buhler, 33 Wis. 2d at 146-47.[21]

issues of fact or law——and its misapprehension of our discussion of Berman v. Parker, 348 U.S. 26 (1954), David Jeffrey Co., 267 Wis. 599, and Nowell v. City of Wausau, 2013 WI 88, ¶46, 351 Wis. 2d 1, 838 N.W.2d 852——which we rely on for the proposition that a finding of blight under Wis. Stat. § 66.1105(4)(gm)4.a. is a legislative one. From this, we are compelled to conclude that the dissent does not seem to understand the significance of the difference between legislative facts/findings and judicial facts/findings. See, e.g., Ann Woolhandler, Rethinking the Judicial Reception of Legislative Facts, 41 Vand. L. Rev. 111, 113-16 (1988).

[21] Because we conclude that the findings of blight are legislative determinations, we need not address Plaintiffs' coordinate claims regarding the public purpose doctrine, which assume that these determinations are reducible to judicial fact finding ("If a [TID] ostensibly created to address issues of blight does not actually serve to eliminate blight, it lacks a public purpose and therefore represents an unconstitutional expenditure of public funds.").

2. Assertions under Wis. Stat. § 66.1105(4m)(b)2.

a. The substantive law

¶41 Wisconsin Stat. § 66.1105(4m) states, in relevant part, as follows:

> Joint review board. (a) Any city that seeks to create a tax incremental district, amend a project plan, [or] have a district's tax incremental base redetermined under sub (5)(h) . . . shall convene a temporary joint review board under this paragraph, or a standing joint review board under sub (3)(g), to review the proposal. . . .
>
> (b) 1. The board shall review the public record, planning documents and the resolution passed by the local legislative body or planning commission under sub (4)(gm) . . . .
>
> 2. Except as provided in subd. 2m., no tax incremental district may be created and no project plan may be amended unless the board approves the resolution adopted under sub (4)(gm) . . . by a majority vote within 30 days after receiving the resolution. . . . The board may not approve the resolution under this subdivision unless the board's approval contains a positive assertion that, in its judgment, the development described in the documents the board has reviewed under subd. 1. would not occur without the creation of a tax incremental district.

§ 66.1105(4m)(a), (b)1.-2.

b. The allegations in Plaintiffs' complaint

¶42 With regard to this claim, Plaintiffs' complaint alleges the following facts:

> 44. [D]evelopment plans unrelated to the Confluence Project were already underway with respect to certain of the historic properties within TID #10. For example, the Kline Department Store building was in the hands of a new owner who had publicly announced a redevelopment plan for that property. And the owner of the historic property at 2 South Barstow Street had already entered into an agreement with the City for

29

the renovation and redevelopment of that building with City-negotiated requirements that its historic character be preserved.

45. . . . The City's decision . . . to fund the Confluence Project . . . forced the alternative plans to be abandoned . . . .

53. On September 26, 2014, the JRB adopted a resolution approving Amendment No. 3 to TID #8.

54. The statement in the resolution that in the judgment of the JRB "the development described in the Amendment [to TID #8] would not occur without the amendment" is neither supported by record evidence nor factually correct.

60. On October 22, 2014, the JRB adopted a Resolution approving the creation of TID #10.

61. The statement in the Resolution that in the judgment of the JRB "the development described in the Project Plan would not occur without the creation [presumably of TID #10]" is neither supported by record evidence nor is factually correct.

76. . . . The JRB did not "review the public record, planning documents, and the resolution passed by" the City Council for Amendment No 3. to TID #8 . . . ; it considered only a conclusory three-page "Joint Review Board Report."

87. . . . The JRB did not "review the public record, planning documents and the resolution passed by" the City Council [for creation of TID #10].[22]

(Alterations in ¶¶54 and 61 in original.)

   c.   These allegations are insufficient to state a claim upon which relief may be granted.

¶43 To determine whether these allegations state a claim upon which relief may be granted, we must interpret the statute; specifically, we must determine what the statute means when it requires that that the JRB's "approval contain[] a positive assertion." The interpretation of a statute is a question of law that we review de novo. See Estate of Miller, 378 Wis. 2d 358, ¶25.

¶44 Plaintiffs argue that redevelopment in the areas in question would have occurred without the TIDs and that, "when the legislature established conditions for diverting tax money for the benefit of private parties, it intended to permit such diversion only where those conditions actually exist." In this regard, "[c]ourts are more than capable of evaluating a factual determination made by a municipal body," and "no Wisconsin court has ever held that declaratory judgment actions may not be used

---

[22] These allegations span the first and second claims of Plaintiffs' complaint, which address TID 8 and TID 10, respectively. With regard to both claims, Plaintiffs' complaint also alleged that the JRB could not have "reasonably concluded" "that development would not occur . . . without tax incremental financing." This is a legal conclusion which we disregard because "legal conclusions stated in the complaint are not accepted as true, and [] are insufficient to enable a complaint to withstand a motion to dismiss." Data Key Partners, 356 Wis. 2d 665, ¶19.

31

to challenge" TIDs. Moreover, where the "development would occur in the area without a TID, the TIDs do not serve [a] public purpose[]." The City argues that the JRB's "but for" assertions are legislative acts and that Plaintiffs "failed to plead sufficient facts to satisfy the bedrock separation-of-powers principle that challenges to state and local legislative acts should not be resolved by the judicial process if they are 'fairly debatable.'" In this regard, "[l]egislative acts enjoy a high level of judicial deference" and the complaint "does not demonstrate the duly authorized . . . Joint Review Board [determinations] were clearly in error." Moreover, the complaint "does not demonstrate it is 'clear and palpable that there can be no benefit to the public'"; thus, Plaintiffs have not stated a claim for violation of the public purpose doctrine. We conclude that Plaintiffs' complaint was properly dismissed as to declaratory judgment on this issue because the JRB's "but for" assertions are legislative determinations that do not present justiciable issues of fact or law.

¶45 "[S]tatutory interpretation begins with the language of the statute." Kalal, 271 Wis. 2d 633, ¶45. Here, the statute states, in relevant part, as follows:

> [N]o tax incremental district may be created and no project plan may be amended unless the board approves the resolution adopted under sub. (4)(gm) . . . . The board may not approve the resolution under this subdivision unless the board's approval contains a positive assertion that, in its judgment, the development described in the documents the board has reviewed under subd. 1. would not occur without the creation of a tax incremental district.

32

Wis. Stat. § 66.1105(4m)(b)2.   "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."   Wis. Stat. § 990.01(1); see also Kalal, 271 Wis. 2d 633, ¶45; Scalia & Garner, supra ¶32 at 69-77 ("Ordinary-Meaning Canon").

¶46 "Positive assertions" is not a defined term in the statute.   The word "assertion" is, however, defined in Black's Law Dictionary: "1. A declaration[23] or allegation.[24]   2. A person's speaking, writing, acting, or failing to act with the intent of expressing a fact or opinion; the act or an instance of engaging in communicative behavior."   Assertion Black's Law Dictionary, supra ¶33 at 139.   Given this ordinary meaning of "assertion," the plain language of the statute does not require that the JRB itemize the evidence in the record that supports its "but for" assertion.

¶47 This plain language interpretation is supported by our analysis above because, as with the City Common Council's finding of blight, "[t]he Joint Review Board's task was to look at the TIF District as a whole and determine whether development would occur without the use of tax incremental financing." State ex rel. Olson v. City of Baraboo Joint Review Bd.,

---

[23] "Declaration" is defined:   "A formal statement, proclamation, or announcement . . . ."   Declaration Black's Law Dictionary 493 (10th ed. 2014).

[24] "Allegation" is defined: "A declaration that something is true . . . ."   Allegation id. at 90.

33

2002 WI App 64, ¶29, 252 Wis. 2d 628, 643 N.W.2d 796. The issue is not whether one owner of one structure plans to redevelop one property, because "the piecemeal approach, the [remediation] of individual structures . . . would be only [] palliative." Berman, 348 U.S. at 34. Rather, the redevelopment projects permitted under the statute are of an integrated nature so as to prevent the recurrence of blight. This determination is holistic and wholly within the discretion of the legislature. Therefore, a "but for" assertion under Wis. Stat. § 66.1105(4m)(b)2. is not susceptible to an action for declaratory judgment because, as a legislative determination, it does not give rise to justiciable issues of fact or law.

¶48 Thus, Plaintiffs have failed to state claims upon which relief may be granted because a court cannot issue a declaration regarding the wisdom of a legislative determination. See, e.g., Aicher, 237 Wis. 2d 99, ¶57 ("It is not our role to determine the wisdom or rationale [of] a particular legislative pronouncement."); Gottlieb, 33 Wis. 2d at 415 ("We are not concerned with the wisdom of what the legislature has done."); Buhler, 33 Wis. 2d at 146-47.

3. Cash grants under Wis. Stat. § 66.1105(2)(f)1.a.

a. The substantive law

¶49 Wisconsin Stat. § 66.1105(2)(f)1. states, in relevant part, as follows:

> "Project costs" mean any expenditures made or estimated to be made or monetary obligations incurred or estimated to be incurred by the city which are listed in a project plan as costs of public works or

improvements within a tax incremental district . . . .
"Project costs" include:

> a. Capital costs including, but not limited to,
> the actual costs of the construction of public works
> or improvements, new buildings, structures, and
> fixtures; the demolition, alteration, remodeling,
> repair or reconstruction of existing buildings,
> structures and fixtures other than the demolition of
> listed properties as defined in s. 44.31(4) . . . .

§ 66.1105(2)(f)1.a. Section 44.31(4) defines "listed property" to mean "property which is listed on the national register of historic places in Wisconsin or the state register of historic places, or both." Wis. Stat. § 44.31(4).

> b. The allegations in Plaintiffs' complaint

¶50 With regard to this claim, Plaintiffs' complaint alleges the following facts:

> 42. . . . The buildings that have been purchased
> and subsequently demolished by the developer include
> the Kline Department Store, which was listed on the
> National Register of Historic Places. Also demolished
> were several other buildings within the Confluence
> Commercial District, also on the National Register.
>
> 43. A substantial part of the development costs
> actually incurred by the developer thus includes the
> costs of demolition as well as the purchase price of
> the Kline Department Store building and other
> buildings that are listed properties pursuant to Wis.
> Stat. § [44.31(4)].
>
> 46. The Project Plan for TID #10 indicates that
> $10,400,000 of the project costs will come in the form
> of "contributions"——i.e. cash payments from the City——
> to the Confluence developer. These contributions are
> to be paid in the form of cash grants to the
> partnership to compensate it for development costs.
> The funds . . . depend upon its achieving specified
> milestones in the project, but they are paid to the
> developer in a lump sum once those milestones have
> been reached. Neither the Project Plan for TID #10

nor the agreements with the developer clearly provide that the lump sum grants may not be used by the Confluence developer to reimburse itself for some or all of the costs of purchasing then demolishing listed properties that it had already incurred.

94. . . . Given the lump sum character of the developer payments, there is in fact no way to assure that the payments have been used as reimbursement for certain already incurred costs, and not used as reimbursement for others.[25]

c. These allegations are insufficient to state a claim upon which relief may be granted.

¶51 To determine whether these allegations state a claim upon which relief may be granted we must interpret the statute. The interpretation of a statute is a question of law that we review de novo. See Estate of Miller, 378 Wis. 2d 358, ¶25.

¶52 Plaintiffs argue that they "alleged that TIF funds for TID #10 were in fact being used to reimburse the developer for the acquisition and destruction of historic properties," contrary to Wis. Stat. § 66.1105(2)(f)1.a., and that to conclude otherwise would mean that "reimbursement for the destruction of historic buildings can be challenged only when TID funds are expressly earmarked for demolition." The City argues that

---

[25] With regard to this claim, Plaintiffs' complaint also alleged the following legal conclusions: (1) that, under Wis. Stat. § 66.1105(2)(f)1.a., "tax incremental funds cannot be used to compensate a developer for the costs associated with the destruction of listed properties"; and (2) that "the TID #10 project plan . . . unlawfully reimburses the developer for such costs." We disregard Plaintiffs' legal conclusions because "legal conclusions stated in the complaint are not accepted as true, and [] are insufficient to enable a complaint to withstand a motion to dismiss." Data Key Partners, 356 Wis. 2d 665, ¶19.

Plaintiffs' claim here fails because it is moot, as the buildings in question have already been demolished, and because the complaint "fails to plead facts demonstrating any connection between TIF funds and historic building acquisition or demolition." We conclude that Plaintiffs' third claim was properly dismissed because it does not allege facts which plausibly establish that the City's cash grant for TID 10 was used to reimburse the developer's costs associated with demolishing historic buildings.

¶53 "[S]tatutory interpretation begins with the language of the statute." Kalal, 271 Wis. 2d 633, ¶45. Wisconsin Stat. § 66.1105(2)(f) states, in relevant part, as follows:

> "Project costs" include . . . [c]apital costs including . . . the demolition, alteration, remodeling, repair or reconstruction of existing buildings, structures and fixtures other than the demolition of [property which is listed on the national register of historic places in Wisconsin or the state register of historic places, or both].

§ 66.1105(2)(f)1.a. The plain language of this provision establishes that it would be a violation of the statute for a developer to use money allocated for "project costs" to pay for the demolition of historic buildings.

¶54 This is not, however, what Plaintiffs alleged. Although Plaintiffs alleged that the $10.4 million cash grant was for "project costs," they did not allege facts which establish that the developer in fact used the money from the cash grant to pay for the demolition of Kline Department Store or other historic buildings. Nor did they allege facts which

37

demonstrate that the developer was likely to do so. Plaintiffs alleged only that "there is . . . no way to assure" that the developer did not use the cash grant to pay for the demolition of historic buildings.

¶55 Thus, Plaintiffs' allegations fail to state a claim upon which relief can be granted because, even if taken as true, they establish only the possibility that funds could be used to pay for the demolition of historic buildings. This is not "enough heft to 'sho[w] that the pleader is entitled to relief.'" Data Key Partners, 356 Wis. 2d 665, ¶26 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007)). "'[I]t gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitle[ment] to relief.'" Id. (second alteration in original) (quoting Bell Atl. Corp., 550 U.S. at 557).

### 4. Cash grants under Article VIII, Section 1

#### a. The substantive law

¶56 Article VIII, Section 1 of the Wisconsin Constitution states, in relevant part, as follows:

> The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods.

Wis. Const. art. VIII, § 1.

b. The allegations in Plaintiffs' complaint

¶57 With regard to this claim, Plaintiffs' complaint alleges the following facts:

42. The developer purchased the properties on the Confluence Project site in three separate transactions in May, 2012, April, 2014, and June, 2014 . . . .

106. [T]he project plans provide for millions of dollars of incremental TID taxes to be paid directly to the owner of the property within the TID, with no meaningful restrictions except that the developer use them to reimburse itself for "project costs."[26]

c. These allegations are insufficient to state a claim upon which relief may be granted.

¶58 To determine whether these allegations state a claim upon which relief may be granted we must interpret the statute and Article VIII, Section 1 of the Wisconsin Constitution (hereinafter the "Uniformity Clause"). The interpretation of a statute is a question of law that we review de novo. See Estate of Miller, 378 Wis. 2d 358, ¶25. The interpretation of a constitutional provision is also a question of law that we

---

[26] With regard to this claim, Plaintiffs' complaint also alleged that "[t]his arrangement functions as a tax rebate or tax credit, and . . . constitutes a violation of the Uniformity Clause . . . [b]ecause the developer here is being taxed at a more favorable rate than an owner of identically-assessed property elsewhere." This is a legal conclusion, which we disregard because "legal conclusions stated in the complaint are not accepted as true, and [] are insufficient to enable a complaint to withstand a motion to dismiss." Data Key Partners, 356 Wis. 2d 665, ¶19.

39

review de novo. <u>Madison Teachers, Inc. v. Walker</u>, 2014 WI 99, ¶13, 358 Wis. 2d 1, 851 N.W.2d 337.

¶59 Plaintiffs argue that the TIDs violate the Uniformity Clause because "the owner is paying the same formal rate as everyone else, but is getting paid a reimbursement that lowers its effective rate"; thus, the cash grants constitute "an unconstitutional tax rebate." Plaintiffs argue that this is an as-applied challenge because they "seek[] only to invalidate these particular TIDs" and "[a] ruling for [Plaintiffs] on this claim would not bar all cash grants under [Wis. Stat.] § 66.1105(2)(f)2.d." The City argues that the complaint "does not plead sufficient facts to satisfy the burden necessary to challenge the constitutional validity of a state statute" because "[i]t is not sufficient to say reasonable minds may disagree"; rather "[a]ny doubt as to constitutionality must be resolved in favor of constitutionality." It also argues that Plaintiff's claim is a facial challenge, and that Plaintiffs have not successfully distinguished <u>Sigma Tau</u>, where this court upheld the Tax Increment Law against such a challenge. We conclude that Plaintiffs' fourth claim was properly dismissed because it does not allege facts which plausibly establish that the cash grants are intended or used to pay the property taxes of owner-developers.

¶60 As a preliminary matter, we conclude that Plaintiffs are attempting to raise an as-applied challenge to the constitutionality of cash grant disbursements pursuant to Wis. Stat. § 66.1105(2)(f)2.d. Our prior cases distinguish between

40

facial and as-applied challenges as follows: a facial challenge is "[a] claim that a statute . . . always operates unconstitutionally"; an as-applied challenge is "a claim that a statute is unconstitutional on the facts of a particular case or to a particular party."  Olson v. Town of Cottage Grove, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211 (citing Black's Law Dictionary); see also Tammy W-G. v. Jacob T., 2011 WI 30, ¶¶46-48, 333 Wis. 2d 273, 797 N.W.2d 854; State v. Wood, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63.  This distinction is significant because, although the presumption that a statute is constitutional applies in both facial and as-applied challenges, in an as-applied challenge "there is no presumption the statute has been applied in a constitutional manner."  Milewski v. Town of Dover, 2017 WI 79, ¶15, 377 Wis. 2d 38, 899 N.W.2d 303.

¶61 Here, Plaintiffs' claim is that cash grants to the owner-developer violate the Uniformity Clause because they effectively reimburse the owner-developer for property taxes paid on the project property.  These allegations have some characteristics of both a facial challenge and an as-applied challenge, as defined in our prior cases.  In other words, one could argue that the challenge is either.  On the one hand, it has the character of a facial challenge because, if Plaintiffs are successful, the statute would be invalidated beyond these particular TIDs; that is, all cash grants to all owner-developers would be unconstitutional.  On the other hand, it is more of an as-applied challenge because, if Plaintiffs are

41

successful, this provision of the statute would not always operate unconstitutionally; that is, Plaintiffs' allegations do not challenge cash grants to developers who do not own the land being developed.  Thus, Plaintiffs' claim does not fit clearly within one or the other of the traditional, categorical definitions for constitutional challenges.

¶62 Some have reasoned that challenges like this exist because there is no "sharp, categorical distinction between facial and as-applied . . . challenges to the validity of statutes."  Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 Harvard L. Rev. 1321, 1336 (2000).  Fallon opines that this is because "a litigant must always assert that the statute's application to her case violates the [c]onstitution"; thus, "determinations that statutes are facially invalid properly occur only as logical outgrowths of rulings on whether statutes may be applied to particular litigants on particular facts."  Id. at 1327-28.  Here, we conclude that Plaintiffs' claim is an as-applied challenge because, even if Wis. Stat. § 66.1105(2)(f)2.d. is invalid as Plaintiffs claim, the constitutional infirmity would not invalidate all applications of this provision, nor would it render the remainder of the statute invalid.

¶63 We have once before upheld Wis. Stat. § 66.1105 against a constitutional challenge.  See Sigma Tau, 93 Wis. 2d 392.  In Sigma Tau we concluded that "the Tax Increment Law is constitutional" on its face because "[a]ll tax payers within the territorial limits of each . . . district [] continue

42

to be taxed at a uniform rate based upon valuations uniformly arrived at." Id. at 412.[27] At that time, however, the Tax Increment Law did not incorporate the particular provision at issue here,[28] and a statute once held to be constitutional, is not "forever and always" constitutional, "regardless of any legislative alterations."[29] Voters, 376 Wis. 2d 479, ¶46. Thus,

---

[27] In doing so, we distinguished two of our prior cases. See State ex rel. La Follette v. Torphy, 85 Wis. 2d 94, 108, 270 N.W.2d 187 (1978) (concluding that the Improvements Tax Relief Law violated the Uniformity Clause because its rebate credits for certain property owners "lead[] to the indisputable conclusion that taxpayers owning equally valuable property will ultimately be paying disproportionate amounts of real estate taxes."); Gottlieb v. City of Milwaukee, 33 Wis. 2d 408, 428-29, 147 N.W.2d 633 (1967) (concluding that the Urban Redevelopment Law violated the Uniformity Clause because its suspension of property taxes for redevelopment corporations constituted a partial exemption). We do not perceive these cases to be directly applicable to the issue here presented and therefore do not analyze them further.

We note, however, that, as we pointed out in Torphy, "[t]he initial question is whether the [law] is a tax statute subject to the uniformity clause." 85 Wis. 2d at 104; see also State ex rel. Harvey v. Morgan, 30 Wis. 2d 1, 10, 139 N.W.2d 585 (1966) ("The [question of whether chapter 580 violated the uniformity clause] is relevant only if Ch. 580 is in fact a tax law."). Neither party has presented arguments regarding whether the Tax Increment Law is a tax law and, for the purposes of our analysis, we assume without deciding that it is.

[28] See 2003 Wis. Act 126, § 3.

[29] In this regard, we note that the legislature made numerous amendments to Wis. Stat. § 66.1105 since the 2013-14 version considered herein. See 2015 Wis. Act 60, §§ 32-36; 2015 Wis. Act 75; 2015 Wis. Act 96; 2015 Wis. Act 254, §§ 1-7; 2015 Wis. Act 255; 2015 Wis. Act 256, §§ 3-18; 2015 Wis. Act 257, §§ 7-12; 2017 Wis. Act 58, §§ 19-21.

<u>Sigma Tau</u> is not dispositive on the issue here presented and we undertake a de novo analysis.[30]

¶64 "[S]tatutory interpretation begins with the language of the statute." <u>Kalal</u>, 271 Wis. 2d 633, ¶45. Wisconsin Stat. § 66.1105(2)(f)2. states, in relevant part, as follows:

> Notwithstanding subd. 1., none of the following may be included as project costs for any tax incremental district for which a project plan is approved . . .
>
> d. Cash grants made by the city to owners, lessees, or developers of land that is located within the tax incremental district unless the grant recipient has signed a development agreement with the city, a copy of which shall be sent to the appropriate joint review board or, if that joint review board has been dissolved, retained by the city in the official records for that tax incremental district.

Wis. Stat. § 66.1105(2)(f)2.d. Subdivision 1. lists the costs that are "include[d]" within the definition of "[p]roject costs": capital costs, financing costs, real property assembly costs, professional service costs, imputed administrative costs, relocation costs, organizational costs, project plan implementation costs, infrastructure construction or alteration costs, and lead contamination costs. Wis. Stat. § 66.1105(2)(f)1.a.—n. This list does not include property taxes; thus, the plain language of the statute does not affirmatively permit the use of cash grants to pay property

---

[30] Our analysis here, however, does not in any way abrogate or overrule <u>Sigma Tau Gamma Fraternity House Corp. v. City of Menomonie</u>, 93 Wis. 2d 392, 288 N.W.2d 85 (1980).

taxes. We presume, however——absent some textual evidence that the legislature intended the word "include" to be interpreted as a term of limitation——that the legislature's use of "include" denominates a nonexclusive list. See State v. Popenhagen, 2008 WI 55, ¶¶43-47, 309 Wis. 2d 601, 749 N.W.2d 611. Thus, the plain language of the statute also does not affirmatively prohibit use of cash grants allocated for projects costs to pay property taxes.

¶65 The fact that a statute does not affirmatively prohibit a possibility is not, however, the standard. Rather,

> [a]ll legislative acts are presumed constitutional and we must indulge every presumption to sustain the law. Any doubt that exists regarding the constitutionality of the statute must be resolved in favor of its constitutionality. Consequently, it is insufficient for a party to demonstrate that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. Instead, the presumption can be overcome only if the party establishes the statute's unconstitutionality beyond a reasonable doubt.

Madison Teachers, Inc., 358 Wis. 2d 1, ¶13 (citations omitted). Thus, to establish that a statute violates the Uniformity Clause, a plaintiff must demonstrate beyond a reasonable doubt that the statute contravenes the rule that "taxation shall be uniform." Wis. Const. art. VIII, § 1. This is not what Plaintiffs alleged. Plaintiffs did not allege facts which establish that cash grants are intended to reimburse owner-developers for property taxes. Nor did they allege facts which establish that owner-developers in fact use cash grants to pay property taxes, or that owner-developers are likely to do so.

45

Plaintiffs alleged only that a requirement that owner-developers use cash grants for "project costs" imposes "no meaningful restrictions."

¶66 Similarly, although Plaintiffs alleged that "millions of dollars of incremental TID taxes [will] be paid directly to the owner of property within the TID," they did not allege facts which establish that the developer here in fact used that money to pay its property taxes. Nor did they allege facts which demonstrate that the developer here was likely to do so. Plaintiffs alleged only that the project plan imposes "no meaningful restrictions except that the developer use [the money] to reimburse itself for 'project costs.'"

¶67 Thus, Plaintiffs' allegations fail to state a claim upon which relief can be granted because, even if taken as true, they establish only that the statute does not explicitly exclude property taxes from the definition of "project costs"; in other words, that the statute does not preclude the possibility that developers could use cash grants to pay property taxes. This is not sufficient to state a constitutional challenge under the Uniformity Clause because such a possibility does not even amount to an allegation that the statute is "probably unconstitutional," let alone unconstitutional beyond a reasonable doubt. Madison Teachers, Inc., 358 Wis. 2d 1, ¶13. Moreover, Plaintiffs' allegations fail to state a claim upon which relief can be granted because, even if taken as true, they establish only the possibility that the developer here could use the funds to pay property taxes. This is not "enough heft to

'sho[w] that the pleader is entitled to relief.'" Data Key Partners, 356 Wis. 2d 665, ¶26 (alteration in original) (quoting Bell Atl. Corp., 550 U.S. at 557). "'[I]t gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitle[ment] to relief.'" Id. (second alteration in original) (quoting Bell Atl. Corp., 550 U.S. at 557).

¶68 In sum, Plaintiffs' complaint was properly dismissed as to declaratory judgment because it fails to state claims upon which relief may be granted. The first and second counts fail because the City Common Council's findings of blight and the JRB's "but for" assertions are legislative determinations that do not present justiciable issues of fact or law; the third count fails because it does not allege facts which plausibly establish that the City's cash grant for TID 10 was used to reimburse the developer's costs associated with demolishing historic buildings; and the fourth count fails because it does not allege facts which plausibly establish that cash grants are intended or used to pay developers' property taxes.

## C.  Certiorari Review

¶69 We conclude, however, that Plaintiffs' first and second claims are reviewable under certiorari. Plaintiffs argue that a "preference for certiorari review is an abdication of judicial responsibility," and that it is insufficient because it "would entail no discovery or other opportunity to assess

47

whether . . . [the] incantations of 'blight' and 'but for' development are accurate."[31]   The City argues that common law

_____

[31] Plaintiffs cite three cases in support of their argument that these are determinations susceptible to judicial fact finding, none of which actually support their argument.   In Fenton v. Ryan, we concluded that whether a proposed village possesses the requisite attributes is a question of judicial character because, if the attributes are not present, "the uniformity of town and county government guaranteed by the Constitution is invaded," 140 Wis. 353, 359, 122 N.W.2d 756 (1909);   such questions of constitutionality are judicial questions.   See, e.g., Gottlieb, 33 Wis. 2d at 415-16 ("We are not concerned with the wisdom of what the legislature has done. We are judicially concerned only when the statute clearly contravenes some constitutional provision.").   In Town of Mt. Pleasant v. City of Racine, we held that a city's determination of its own boundaries was a legislative determination, and the judicial question was limited to whether the boundary lines were "reasonable in the sense that they were not fixed arbitrarily, capriciously, or in the abuse of discretion."   24 Wis. 2d 41, 46, 127 N.W.2d 757 (1964) (citing Town of Fond du Lac v. City of Fond du Lac, 22 Wis. 2d 533, 126 N.W.2d 201 (1964)).   And, in Bechthold v. City of Wauwatosa, the petitioners challenged the city's adherence to the procedure for advertising bids for street repair, and the judicial questions were whether strict or substantial compliance was required, and whether the undisputed facts demonstrated that the city had complied, 228 Wis. 544, 551-58, 277 N.W. 657 (1938); Plaintiffs here do not dispute that the City adhered to the correct procedure.

Plaintiffs also claim that "in at least three published cases, TIF actions were brought as declaratory actions." Two of these cases are distinguishable on the basis that they sought a declaration of constitutionality, which, as noted above, is a proper question for the court. See Kirley, 172 Wis. 2d 191; Gottlieb, 33 Wis. 2d 408. The third case never reached the declaratory question, and thus provides no support for Plaintiffs' argument. See Town of Baraboo v. Vill. of West Baraboo, 2005 WI App 96, ¶¶31-37, 283 Wis. 2d 479, 699 N.W.2d 610. Plaintiffs' reliance on Kaiser v. City of Mauston is similarly misplaced because that case addressed the validity of an ordinance under a statute, which is not the issue here. 99 Wis. 2d 345, 354-55, 299 N.W.2d 259 (1980).

certiorari is the applicable standard of review because it is a mechanism by which a court may test the validity of a decision rendered by a municipality; is appropriate where, as here, no statutory appeal process has been created; is the proper standard to review local legislative functions; and is consistent with the longstanding policy that "declaratory relief is disfavored if there is a 'speedy, effective and adequate' alternative remedy." We conclude that certiorari review is appropriate and adequate to address Plaintiffs' claims regarding the municipality's findings of blight and "but for" assertions because certiorari review is the mechanism by which a court should test the validity of a municipality's legislative determinations.

¶70  "It is well established in this state that where there are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari." State ex rel. Johnson v. Cady, 50 Wis. 2d 540, 549-50, 185 N.W.2d 306 (1971). No statutory appeal process has been created to review the formation of a TID; therefore, certiorari review of the decisions of both the City Common Council and the JRB is appropriate. See Wis. Stat. § 66.1105; Olson, 252 Wis. 2d 628, ¶32 (Roggensack J., dissenting); see also Ottman v. Town of Primrose, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411 ("Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality.").

¶71 Where, as here, there is no express statutory method of review, common law certiorari applies. <u>Ottman</u>, 332 Wis. 2d 3, ¶35.

> When conducting common law certiorari review, a court reviews the record compiled by the municipality and does not take any additional evidence on the merits of the decision. The courts review is limited to: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. . .

<u>Id.</u> (citation omitted). Additionally, "on certiorari review, there is a presumption of correctness and validity to a municipality's decision." <u>Id.</u>, ¶48. This standard is commensurate with our established deference to legislative determinations.[32] Therefore, certiorari review of the decisions of both the City Common Council and the JRB is also an adequate remedy.

¶72 The record before us, however, does not contain a "record compiled by the municipality" because the litigation

---

[32] See, e.g., <u>Town of Baraboo</u>, 283 Wis. 2d 479, ¶18 (quoting <u>Town of Campbell v. City of La Crosse</u>, 2003 WI App 247, ¶19, 268 Wis. 2d 253, 673 N.W.2d 696) ("The doctrine known as the 'rule of reason' is applied by the courts to ascertain whether the power delegated to the cities and villages has been abused in a given case."); <u>see also</u> <u>Fond du Lac</u>, 22 Wis. 2d 533 (applying the rule of reason to annexation); <u>Joint Sch. Dist. No. 1</u>, 56 Wis. 2d at 797 ("The trial court properly confined its review to whether the State Appeal Board had jurisdiction and whether the order evinced arbitrary or capricious action.").

below did not proceed to that point.  See supra notes 5-7.  We therefore remand the cause to the circuit court for certiorari review of the decisions of the City Common Council and the JRB.

IV.   CONCLUSION

¶73 On review, we consider two issues.  First, we consider whether dismissal of Plaintiffs' declaratory judgment claims was proper.  We conclude that it was, because Plaintiffs have failed to state claims upon which relief can be granted: the first and second counts fail because the City Common Council's findings of blight and the JRB's "but for" assertions are legislative determinations that do not present justiciable issues of fact or law; the third count fails because it does not allege facts which plausibly establish that the City's cash grant for TID 10 was used to reimburse the developer's costs associated with demolishing historic buildings; and the fourth count fails because it does not allege facts which plausibly establish that cash grants are intended or used to pay owner-developers' property taxes.

¶74 Second, we consider whether certiorari review is appropriate.  We conclude that it is, because certiorari review is the appropriate mechanism for a court to test the validity of a legislative determination.  The record before us, however, does not contain a municipal record sufficient to enable our review.   Accordingly, we remand to the circuit court for certiorari review of Plaintiffs first and second claims.

¶75  Thus, we affirm the decision of the court of appeals on the other grounds.

¶76  *By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded for further proceedings consistent with this opinion.

¶77 REBECCA GRASSL BRADLEY, J. and DANIEL KELLY, J. *(dissenting).* The court held that Plaintiffs' richly-detailed and amply supported 25-page Complaint does not sufficiently state a claim. It also said Plaintiffs may not request declaratory relief on their claims that the City of Eau Claire (the "City") lacked authority to expand TID #8 or create TID #10. And ignoring the obvious fungibility of money, it said Plaintiffs' assertion that developers who were reimbursed out of TID funds for demolishing historic buildings did not plausibly allege that TID funds were used to pay for demolishing historic buildings.

¶78 The court's decision forecloses taxpayers from ever seeking declaratory judgment when municipalities violate the TIF statutes. Our court (and the court of appeals) sidestepped the complex substantive issues, incorrectly applied the law, and deprived Plaintiffs of their rights. We write separately to explain why: (1) Plaintiffs have standing to pursue their Complaint; (2) declaratory judgment is an appropriate avenue for seeking relief; and (3) the Complaint sufficiently alleges facts to support each claim, although not every claim is legally supportable. We specifically address why the factual existence of "blight" is justiciable, why Plaintiffs' cash grant claim should have survived a motion to dismiss, and why TIDs in general, and these cash grants specifically, do not implicate the Uniformity Clause of the Wisconsin Constitution. We respectfully dissent.

1

## I. BACKGROUND[1]

¶79 The City expanded TID #8 and created TID #10 in conjunction with a development known as the Confluence Project. Our statutes authorize municipalities to create TIDs as a mechanism to fund any of four types of projects: blight elimination (Wis. Stat. § 66.1105); urban rehabilitation or conservation (Wis. Stat. § 66.1337(2m)); industrial development (Wis. Stat. § 66.1101); or promotion of mixed use development (Wis. Stat. § 66.1105(2)(cm)). The City claimed it amended TID #8 and created TID #10 to combat blight. The controlling statute defines "blighted area" as either: (1) a slum area or an area that endangers life or property and is detrimental to health, safety, morals, or welfare; or (2) a predominantly open area that consists primarily of an abandoned highway corridor or demolished structures that substantially impair community growth. See Wis. Stat. § 66.1105(2)(ae)1.

¶80 The Confluence Project engendered considerable debate, which focused primarily on whether, as a factual matter, the TIDs actually comprised blighted areas. At public hearings addressing the TIDs, those opposed to the project presented evidence that the areas were not blighted, that the areas contained historic buildings, and that redevelopment of some of

---

[1] This section primarily recounts facts and reasonable inferences from Plaintiffs' Complaint. In reviewing a motion to dismiss, we accept as true the alleged facts and all reasonable inferences therefrom. See Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. We draw all legal conclusions independently. See Walberg v. St. Francis Home, Inc., 2005 WI 64, ¶6, 281 Wis. 2d 99, 697 N.W.2d 36.

the buildings was already underway and would occur without the TIDs and without the Confluence Project.

¶81  On September 9, 2014, the Eau Claire City Council (the "City Council") approved the amendment to TID #8 and adopted a resolution to that effect.  Nothing in the minutes from that meeting indicates the City Council had any evidence that the area was actually blighted.  The City Council's resolution did not contain any specific facts documenting or explaining why the Council found "not less than 50%, by area, of the real property within the district is . . . a blighted area."  On September 26, 2014, the Joint Review Board (the "Board")[2] approved the City Council's resolution expanding TID #8.

¶82  At the public hearing on TID #10, residents opposed to its creation presented evidence that the City's own records prove the area was not blighted.  Nonetheless, the City Council adopted a resolution approving TID #10 on October 14, 2014.  Although the resolution said that "not less than 50%, by area," was a blighted area in "need of rehabilitation or conservation," Plaintiffs say there is no evidence to support this finding.  On October 22, 2014, the Board adopted the City Council's resolution, claiming the development would not occur without the creation of TID #10.

¶83  Plaintiffs filed a Notice of Claim and Injury with the City claiming the actions related to the TIDs were unlawful,

---

[2] Wisconsin Stat. § 66.1105(4m) describes the role and responsibility of the Joint Review Board.  The majority opinion sets forth the full text of § 66.1105(4m) in ¶41.

3

violated the TIF statutes, and injured the taxpayers by obligating them to pay higher taxes. The Notice advised that disallowance of the claim would cause the taxpayers to file a declaratory judgment action. The City did not respond. Instead, the City Council adopted a resolution appropriating $9,976,100 to the project plans for TID #8 and $5,945,800 for TID #10. It also adopted a resolution authorizing issuance of bonds to be funded by the incremental revenue from TID #8 and TID #10.

¶84 Subsequently, Plaintiffs filed a Complaint seeking declaratory judgment on four claims: (1) the City did not comply with the TIF statutes in expanding TID #8; (2) the City did not comply with the TIF statutes in creating TID #10; (3) the City unlawfully used TID funds to pay for demolition of historic buildings; and (4) the cash grants violated the Uniformity Clause. The Complaint alleged an alternative fifth claim "for certiorari review of the actions taken by the City Council and the Joint Review Board."

¶85 The City denied Plaintiffs' allegations and moved to dismiss the Complaint. As material here, the City claimed: (1) Plaintiffs did not have standing to bring a declaratory judgment or a certiorari action; (2) the TID resolutions are non-justiciable legislative enactments; (3) the Complaint fails to state a claim and any claim based on demolition of the historic buildings is moot; and (4) this court already declared the TIF statutes constitutional in Sigma Tau Gamma Fraternity House Corp. v. City of Menomonie, 93 Wis. 2d 392, 288 N.W.2d 85

4

(1980). The circuit court granted the City's motion, holding Plaintiffs did not have standing, declaratory judgment was inappropriate because the case presented a political question, and the TIF statutes are constitutional.

¶86 The court of appeals affirmed in part and reversed in part. It agreed with the circuit court that Plaintiffs did not have standing to seek a declaratory judgment and that declaratory judgment is an inappropriate avenue to challenge a City's factual findings. See Voters with Facts v. City of Eau Claire, 2017 WI App 35, ¶¶2-3, 376 Wis. 2d 479, 899 N.W.2d 706. It held Plaintiffs did not sufficiently allege a violation of the TIF statutes, their claim regarding illegal payment for demolition of historic buildings was speculative, and they did not sufficiently allege a constitutional violation. Id. It decided, however, that Plaintiffs had the right to certiorari review of Plaintiffs' first and second claims, and remanded to the circuit court. Id., ¶60. We granted Plaintiffs' petition for review.

II. ANALYSIS

A. Standing

¶87 The court "assumes" standing, but does not address it. In this case, the circuit court decided Plaintiffs did not have standing at all, and the court of appeals decided that Plaintiffs did not have standing to seek declaratory judgment. Plainly, the question of "standing" in the context of declaratory judgment claims needs some attention. We should provide guidance on this issue so it does not readily recur. We

5

write to explain why Plaintiffs had standing to assert their claims.

## 1. Standard of Review and Applicable Law

¶88 Whether a plaintiff has standing to bring suit is a question of law we review de novo. See Krier v. Vilione, 2009 WI 45, ¶14, 317 Wis. 2d 288, 766 N.W.2d 517. Taxpayers have standing when the complaint alleges the taxpayer has or will sustain some pecuniary loss as a result of an illegal expenditure of public funds. S.D. Realty Co. v. Sewerage Comm'n., 15 Wis. 2d 15, 21-22, 112 N.W.2d 177 (1961). "A taxpayer [has] a financial interest in public funds. . . . " Id. at 22. Standing exists even when the pecuniary loss alleged is "infinitesimal." Id. The merits of the claim have no bearing on whether standing exists. Kaiser v. City of Mauston, 99 Wis. 2d 345, 360-61, 299 N.W.2d 259 (Ct. App. 1980), overruled on other grounds by DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994) (notice of claim statute) (subsequent case limiting DNR's notice of claim holding omitted); Hart v. Ament, 176 Wis. 2d 694, 699, 500 N.W.2d 312 (1993).

## 2. Application

¶89 We conclude Plaintiffs have standing to pursue a claim that the City of Eau Claire did not follow the requisite procedures outlined in the TIF statutes when the City decided to create TID #10 and expand TID #8. Plaintiffs' claim, if true, necessarily means the taxpayers will suffer pecuniary harm because the City will expend funds without any legal basis.

6

Plaintiffs' Complaint alleges that: (1) they are taxpayers (two of Plaintiffs actually own property within a TID district and assert it is not blighted); (2) the City "failed to satisfy the statutory requirements" and did not make required statutory findings before proceeding with the TIDs; (3) the areas within the TIDs are in fact not blighted areas; and (4) Plaintiffs were harmed as a result of the City's "unlawful actions as their tax dollars will be spent in an unlawful manner, tax revenues from the incremental growth in TID #8 will be unavailable for general purposes such as schools, roads, and public safety, and the incremental tax revenues from TID #8 will be unavailable for other taxing jurisdictions." The Complaint makes the same assertions about TID #10.

¶90 These allegations easily confer taxpayer standing. "An allegation that the city has spent, or proposes to spend, public funds illegally is . . . sufficient to confer standing on a taxpayer." Kaiser, 99 Wis. 2d at 360. When we inquire into standing, we do not evaluate a plaintiff's likelihood of success on the merits. That comes later. When the court of appeals decided that the City's expenditure of tax funds was legal, it improperly explored the merits of Plaintiffs' claims. See Voters with Facts, 376 Wis. 2d 479, ¶¶18-59. The circuit court also erred in its standing analysis by passing on the question, believing it to be political rather than legal. This is error both procedurally and conceptually because it requires a defense of the merits before an opportunity to develop factual support.

7

¶91 A taxpayer's complaint alleging past or future pecuniary loss based upon an unlawful expenditure of tax revenues has long been deemed sufficient to establish standing. Over one hundred years ago, this court recognized that "[e]very taxpayer, great or small, has an interest in the disposition of county funds. Courts will not stop to balance differences or enter into computations to ascertain just how much the taxpayer will be likely to suffer . . . ." Mueller v. Eau Claire Cty., 108 Wis. 304, 311, 84 N.W. 430 (1900). Rather, when a taxpayer shows "'an active or threatened invasion or destruction of a distinct right belonging to himself or to the body of citizens for whom he sues . . . the taxpayer's right to sue is recognized.'" Id. at 312 (citation omitted). See also Hart, 176 Wis. 2d at 698-99 (taxpayer challenge to transfer of a county museum to a private organization); State ex rel. Wis. Senate v. Thompson, 144 Wis. 2d 429, 436, 424 N.W.2d 385 (1988) (taxpayer challenge to "Frankenstein" veto); City of Appleton v. Town of Menasha, 142 Wis. 2d 870, 419 N.W.2d 249 (1988) (taxpayer challenge to statutory scheme for apportionment after annexation of a town); Tooley v. O'Connell, 77 Wis. 2d 422, 439, 253 N.W.2d 335 (1977) (taxpayer challenge to statutory plan for financing city schools from property taxes); Buse v. Smith, 74 Wis. 2d 550, 563, 247 N.W.2d 141 (1976) (taxpayer challenge to negative-aid school financing); State ex rel Sundby v. Adamany, 71 Wis. 2d 118, 124, 237 N.W.2d 910 (1976) (taxpayer challenge to constitutionality of veto); Thompson v. Kenosha Cty., 64 Wis. 2d 673, 679-81, 221 N.W.2d 845 (1974) (taxpayer challenge

8

to statutory creation of countywide assessor system); <u>Vill. of W. Milwaukee v. Area Bd. of Vocational, Tech. and Adult Ed.</u>, 51 Wis. 2d 356, 365-66, 187 N.W.2d 387 (1971) (taxpayer challenge to statute allowing for area vocational education districts); <u>Columbia Cty. v. Bd. of Trs. of Wis. Ret. Fund</u>, 17 Wis. 2d 310, 116 N.W.2d 142 (1962) (taxpayer challenge to statute mandating all counties join the welfare fund); <u>Fed. Paving Corp. v. Prudisch</u>, 235 Wis. 527, 293 N.W. 156 (1940) (taxpayer challenge to statute allowing certain cities to pay funds under contracts later found void).

¶92 Despite longstanding and clear-cut law to the contrary, the circuit court and the court of appeals ruled Plaintiffs lack standing. Instead of correcting the error, this court dodged it, which means it will just come back to us again. The law of standing requires nothing more than Plaintiffs' claim that they are harmed by the unlawful expenditure of their tax dollars.

### B. Dismissal of Counts One and Two

¶93 The first two counts of the Complaint challenge the City's authority to amend TID #8 and create TID #10. They seek a declaration that the City may not exercise TID authority unless (as relevant here) the proposed districts encompass the statutorily-prescribed minimum concentration of blighted properties. This court dismissed these counts for failure to

state a claim because, it said, blight is a non-justiciable legislative determination.[3]

¶94  This conclusion is not possible without indulging two foundational errors.  First, the court never faced, and so did not answer, the central question Plaintiffs raised:  Whether the statutorily-mandated preconditions to the City's exercise of TID authority were satisfied.  And second, the court made a category error when, for purposes of justiciability, it assumed the existence of blight is the same thing as a municipality's response to it.

### 1.  Controlling Legal Principles

¶95 Declaratory judgments, such as the one Plaintiffs requested, are broadly available under our Uniform Declaratory Judgment Act, which says:  "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.  No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for."  Wis. Stat. § 806.04(1).  Such declarations are available so long as there is a justiciable controversy. Milwaukee Dist. Council 48 v. Milwaukee Cty., 2001 WI 65, ¶37,

---

[3] Majority op., ¶4 ("First, we consider whether dismissal of Plaintiffs' declaratory judgment claims was proper. We conclude that it was, because Plaintiffs have failed to state claims upon which relief can be granted:  the first and second counts fail because the City Common Council's findings of blight . . . are legislative determinations that do not present justiciable issues of fact or law . . . .").

244 Wis. 2d 333, 627 N.W.2d 866 ("A declaratory judgment is fitting when a controversy is justiciable.").

¶96 We have previously said that an issue is justiciable, for purposes of declaratory judgment actions, when there is:

(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

(2) The controversy must be between persons whose interests are adverse.

(3) The party seeking declaratory relief must have a legal interest in the controversy——that is to say, a legally protectible interest.

(4) The issue involved in the controversy must be ripe for judicial determination.

Loy v. Bunderson, 107 Wis. 2d 400, 409, 320 N.W.2d 175 (1982) (internal quotation marks and citation omitted). Justiciability, however, does not depend on the ultimate merits of the claim. Tooley v. O'Connell, 77 Wis. 2d 422, 434-35, 253 N.W.2d 335 (1977) ("The merits of plaintiffs' cause of action do not determine its justiciability.").

¶97 As the court recognized, the substantive law informing Plaintiffs' claims controls what they must plead. See majority op., ¶27 ("[T]he sufficiency of a complaint depends on [the] substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." (quoting Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶31, 356 Wis. 2d 665, 849 N.W.2d 693)). It also supplies the raw material for the justiciability analysis.

¶98 The contest with respect to Counts One and Two is over the City's authority to expand TID #8 and create TID #10.

11

The Tax Increment Law (Wis. Stat. § 66.1105) is the source of that authority: "In addition to any other powers conferred by law, a city may exercise any powers necessary and convenient to carry out the purposes of this section, including the power to: (a) Create tax incremental districts and define the boundaries of the districts . . . ." § 66.1105(3). But this is not an absolute grant of power. That is to say, the legislature did not authorize municipalities to create TIDs whenever and wherever they wish. To the contrary, a municipality may not create a TID unless all of the statutorily-defined prerequisites are satisfied. The legislature introduced the operative portion of the Tax Increment Law with this command: "In order to implement the provisions of this section, the following steps and plans are required . . . ." § 66.1105(4).

¶99 One of the requirements a municipality must satisfy before it may create a TID is adoption of a resolution finding that:

> [n]ot less than 50 percent, by area, of the real property within the district is at least one of the following: a blighted area; in need of rehabilitation or conservation work, as defined in s. 66.1337 (2m) (a); suitable for industrial sites within the meaning of s. 66.1101 and has been zoned for industrial use; or suitable for mixed-use development . . . .

Wis. Stat. § 66.1105(4). An area is blighted if it meets any of the following descriptions:

> a. An area, including a slum area, in which the structures, buildings or improvements, which by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which

12

endanger life or property by fire and other causes, or any combination of these factors is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare.

b. An area which is predominantly open and which consists primarily of an abandoned highway corridor, as defined in s. 66.1333 (2m) (a), or that consists of land upon which buildings or structures have been demolished and which because of obsolete platting, diversity of ownership, deterioration of structures or of site improvements, or otherwise, substantially impairs or arrests the sound growth of the community.

Wis. Stat. § 66.1105(2)(ae)1.

¶100 That is the substantive law against which we compare Counts One and Two. Plaintiffs make three relevant allegations. In the first, they say the City acted solely on the basis that the property within the TIDs was blighted. In the second and third, they say that although the City claimed the property within TID #8 and TID #10 (respectively) was blighted, the record before the City contained no evidence this was true. When we consider the sufficiency of a complaint, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Data Key Partners, 356 Wis. 2d 665, ¶19.

¶101 Therefore, the proper analysis accepts the truth of the following two propositions as the starting point: (1) The City exercised TID authority based on its assertion that property within the districts is blighted; and (2) there is no evidence the City's assertion is true. Counts One and Two unmistakably challenge whether the preconditions to the City's exercise of TID authority have been satisfied. Although the court did not say so explicitly, it appears to have concluded

13

these claims are not justiciable because they do not satisfy the third prong of the Loy formula:  "The party seeking declaratory relief must have a legal interest in the controversy——that is to say, a legally protectible interest."  Loy, 107 Wis. 2d at 409-10 (internal quotation marks and citation omitted).  In other words, the court concluded that the people of Wisconsin have no legally protectible interest in ensuring municipalities exercise TID authority only when the legislature says they may.  And that brings us to the first of the court's two foundational errors.

2.  The Court Assumed Away the Question

¶102 The court completely missed that Plaintiffs' challenge goes to whether the preconditions to the City's exercise of TID authority have been satisfied with respect to the areas defined by TIDs #8 and #10.  Steve Martin, the comic genius, once described how to be a millionaire and never pay taxes.  First, he said, get a million dollars.  The court has done something similar in assessing the City's authority with respect to TIDS #8 and #10.  First, it said, assume the authority to create them.  The court spent most of its analysis describing the procedure by which a municipality documents that assumption.  But Plaintiffs' actionable concern is not that the City failed to do its paperwork properly.  Their Complaint alleges that the City lacked the authority to create (or expand) the TIDs because the statutorily-mandated factual predicate to the exercise of that authority does not exist.

¶103 The court's analysis started with the unvoiced assumption that the City had the authority to do what it did,

14

and in so doing, it assumed away Plaintiffs' actual challenge. Here is how the court began: "To determine whether the allegations are sufficient to state a claim upon which relief may be granted, we must interpret the statute; specifically, we must determine what the statute means when it requires that the local legislative body adopt a 'resolution which . . . [c]ontains findings.'" Majority op., ¶30. Why on earth would we do that? No one doubts the City's resolution contains findings. What they doubt is whether they reflect reality. Nonetheless, the court lamented that "finding" is a statutorily-undefined term (as if we do not know what a "finding" is) before settling on a dictionary definition.[4] Then, without explanation, we leapt from Black's definition to the conclusion that the City need not provide evidence for its findings.[5] Let's stipulate that this non sequitur could be saved by some hitherto unknown logic——why would it matter? The manner in which a municipality must document its findings says nothing at all about whether the findings must be, not to put too fine of a point on it, true.

---

[4] Majority op., ¶33 ("A determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record." (quoting Finding of fact, Black's Law Dictionary 749 (10th ed. 29 2014)). That's a fine definition of a finding of fact, although the court's long history with findings of fact probably makes a dictionary definition unnecessary.

[5] Majority op., ¶33 ("Given this ordinary meaning of 'findings', the plain language of the statute does not require that the local legislative body——here, the City Common Council——itemize the evidence in the record that supports its finding of blight.").

15

¶104 The legislature granted municipalities the authority to create TIDs. But it placed a gate with a combination lock in front of that grant of authority. The gate will not swing open unless the statutorily-prescribed combination of conditions is fulfilled. In this case, the City is trying to access TID-creating authority using the blight combination. Plaintiffs say the City did not get it right, and so the gate did not open. The court's response to Plaintiffs' claim was to consider the nature of the record the City must make as it jumps the gate. That is not what the court was supposed to do. It was supposed to consider whether the people of Wisconsin may seek a declaration that the City may not jump the gate. That, however, was only the first of the court's foundational errors.

### 3. The Court's Category Error

¶105 The balance of the court's opinion on Counts One and Two comprised its mistaken conclusion that the existence of blight is a non-justiciable question of legislative policy. This is a profoundly disturbing category error, inasmuch as it caused the court to conclude that facts are contingent on municipal policies——a conclusion that obtains nowhere but in Orwellian dystopias. So the court did not recognize that (1) a municipality's policy, and (2) the facts on the ground to which the policy responds, do not fall into the same category. The first is generally not justiciable; the second is.

¶106 The court created this error when it observed that our statutes define "blight," in part, with reference to some of the maladies that municipalities have the authority to address:

16

> The key language in each of these [blight-related] statutes is that the "area," in its current state, "is detrimental to the public health, safety, morals, or welfare." "Public safety, public health, [and] morality . . . are some of the more conspicuous examples of the traditional application of the police power to municipal affairs," Berman v. Parker, 348 U.S. 26, 32 (1954), and a "municipality's exercise of its police power has traditionally been accorded deference by reviewing courts." Nowell v. City of Wausau, 2013 WI 88, ¶46, 351 Wis. 2d 1, 838 N.W.2d 852.

Majority op., ¶37. Because it saw similar phrases in the description of a municipality's authority and the situations a municipality may address, the court apparently thought they must be in the same category for purposes of the justiciability analysis. They are not.

¶107 The court's category error is the consequence of not recognizing the difference between subjects and objects. The subject is the municipality's authority; the object is the situation to which the municipality may apply that authority. Yes, municipalities have authority to address matters of public health, safety, morals, and welfare. And yes, certain properties and areas are blighted (something that affects public health, safety, morals, and welfare). This inexorably leads to the unremarkable conclusion that municipalities have certain authority (the subject) to remedy properties or areas that are blighted (the object). A logically-ordered universe, however, does not allow the conclusion that this means subjects and objects are the same thing. Just because municipalities have authority to address blight does not mean they have the authority to define what blight is. The legislature has already taken care of that task. It told municipalities, in great

17

detail, what "blighted area" means in the context of the Tax Increment Law. See Wis. Stat. § 66.1105(2)(ae)1.[6]  This conflation of subjects and objects guaranteed the court's justiciability analysis would produce the wrong answer.

¶108 Because of that conflation, the court mistakenly concluded that a challenge to the City's description of reality is as non-justiciable as its policy decisions responding to that reality.  Specifically, the court said that "findings of blight are legislative determinations that 'do[ ] not raise justiciable issues of fact or law.'"  Majority op., ¶36 (quoting Joint Sch. Dist. No. 1 v. State Appeal Bd., 56 Wis. 2d 790, 794, 203 N.W.2d 1 (1973)).  No, findings of blight are most assuredly not legislative determinations.  And the court cited not a single

---

[6] It really could not be otherwise.  If the authority to address blight encompassed the authority to define blight, there would be no end to a municipality's authority.  An enterprising municipality could create authority ex nihilo through the simple expedient of calling any condition it wished to address "blighted."

authority to explain how this could possibly be so.[7] What to <u>do</u> about blight (if anything) is a legislative determination. But the <u>existence</u> of blight (as defined by the legislature) cannot be a legislative determination unless, alone amongst all governmental entities and sentient beings, municipalities have the power to conform the world to their dictates. The first category involves the exercise of legislative judgment and discretion. The second category involves the legislators' accurate apprehension of the world around them. The court's consistent failure to distinguish between these two categories resulted in its implied holding that municipalities are entitled to their own facts.

¶109 Without that category error, none of the authorities the court cited would support its position. Not one. Each of the cases on which it relied addresses matters in the first category——that is, the exercise of a legislative body's judgment

---

[7] The immediately preceding quote from the court's opinion looks like it might contradict our statement, but it does not. Majority op., ¶36 (quoting <u>Joint Sch. Dist. No. 1 v. State Appeal Bd.</u>, 56 Wis. 2d 790, 794, 203 N.W.2d 1 (1973)). The <u>Joint Sch. Dist. No. 1</u> case had nothing to do with blight findings. In fact, the <u>Joint Sch. Dist. No. 1</u> court concluded that the dispute had nothing to do with findings at all. It instead concerned "the wisdom and advisability of the proposed reorganization" of a school district. <u>Id.</u> at 795. The sentence fragment the court cherrypicked says, in full, this: "As a consequence of these holdings, we have concluded that the merits of a school district reorganization is a legislative determination of public policy questions which does not raise justiciable issues of fact or law." <u>Id.</u> at 794. "Public policy questions" are quintessential non-justiciable issues. The existence of a fact, at least outside Orwell's <u>1984</u>, is <u>never</u> contingent on a public policy.

19

and discretion. For example, Joint Sch. Dist. No. 1 did not say that all legislative determinations are non-justiciable. It said "legislative determinations[s] of public policy questions" are not justiciable. Joint Sch. Dist. No. 1, 56 Wis. 2d 790 at 794 (emphasis added). That, of course, is indubitably true. The issue in Joint Sch. Dist. No. 1 was the "wisdom and advisability of the proposed reorganization" of a school district. Id. at 795. The contest was not over objective reality, such as whether the school district did or did not exist. It was over the form the district ought to take, the resolution of which necessarily rests on the legislative body's prudential exercise of discretion. That is what made the legislative determination non-justiciable.

¶110 Similarly, Buhler v. Racine Cty., 33 Wis. 2d 137, 146 N.W.2d 403 (1966), addressed questions of discretion and judgment, not the reality of the world to which that discretion and judgment would be applied. The question there was the propriety of certain zoning classifications. The court concluded that zoning decisions are largely non-justiciable because they are based on the "wisdom" and "desirability" of the varying classifications when applied to the properties in question. Id.at 146-47. If the court's decision today is correct, then not only the wisdom of the zoning would be non-justiciable, but also the very nature of the property to which the zoning applied. Do we really need to say that the nature of the property does not care about what the municipality thinks of

20

it? It is what it is, notwithstanding any number of municipal "findings" to the contrary.

¶111 The court says, in a footnote, that <u>Berman v. Parker</u>, 348 U.S. 26 (1954), supports its proposition that the existence of blight is a non-justiciable legislative determination. <u>See</u> majority op., ¶39, n.20. But it does not explain how. Nor could it, because <u>Berman</u> recognizes the distinction between subjects and objects we have laid out in this dissent: "Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end." <u>Berman</u>, 348 U.S. at 33. As here, the "object" in <u>Berman</u> was blighted property. But as <u>Berman</u> recognized, before the government could act, the object had to have been "within the authority of Congress [the subject]." The authority at issue there was eminent domain, a power granted to the District of Columbia without preconditions. Here, the authority in question is the creation of a TID, an authority that does not exist unless and until certain legislatively-prescribed preconditions have been fulfilled. <u>Berman</u>'s lesson is that, once the legislative body has authority (the subject) to operate on the object (blight), the manner in which it exercises that authority is a legislative determination committed to the legislative body's sound discretion and prudence. Consequently, <u>Berman</u> can have nothing to say here unless we confound subjects and objects.

21

¶112 For essentially the same reasons, David Jeffrey Co. v. City of Milwaukee, 267 Wis. 559, 578, 66 N.W.2d 362 (1954), does not support the court's assertion that the existence of blight is a legislative determination. The issue in David Jeffrey Co. was not whether a municipality has unreviewable power to declare something blighted that is not; it was whether the expressed purpose for eliminating blight in the City of Milwaukee could be considered a "public use" of private property (as required by Article I, sec. 13 of our State Constitution). After converting "public use" into "public purpose," the David Jeffrey Co. court said "[t]he determination of what constitutes a public municipal purpose is primarily a function of the legislative body, subject to a review by the courts, and such determination by the legislative body will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable." Id. at 579. This is so because the purpose for applying the municipality's authority (the subject) to the blighted areas (the object) is a matter of judgment, discretion, and prudence. The David Jeffrey Co. court said nothing to suggest that the existence of blight (the object) is a legislative determination.

¶113 The last case on which the court relies for its proposition, Nowell v. City of Wausau, 2013 WI 88, ¶46, 351 Wis. 2d 1, 838 N.W.2d 852, provides no more support than any of the others. There, a bar owner asked the court to review the City of Wausau's decision to not renew its liquor license. The Nowell court observed that the decision to grant or deny a

22

liquor license is committed to the municipality's unconstrained discretion. Unsurprisingly, that court correctly concluded the municipality's authority was legislative in nature, and subject to only certiorari review. But Nowell can provide no instruction here because Plaintiffs are not asking whether the City exercised its TID authority in a prudent manner; they are asking whether the preconditions to unlimbering that authority have been satisfied. Nowell does not——and cannot——tell us that the existence of blight is a non-justiciable legislative determination. And the court has identified no case capable of suggesting it is.

\*

¶114 The proper justiciability analysis would recognize that facts are not contingent on a municipality's prudential exercise of its discretion. Instead, if the world is to make any sense at all, the exact opposite must be true: The municipality's policies must be contingent on the facts. And that means that facts are justiciable, while policies are generally not. There is no mystery to this. Justiciability, as the court noted, implicates the separation of powers. Baker v. Carr, 369 U.S. 186, 217 (1962) ("It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers."); Majority op., ¶39 ("This is because de novo review of a legislative determination violates the doctrine of separation of powers.").

23

We respect the separation of powers, in part, by not second-guessing a legislative body's policy choices. Those choices are generally not justiciable because they comprise the prudential exercise of judgment and discretion, variables that by their nature are not susceptible to judicial inquiry. But legislatures have no monopoly on reality, and so there is no conceivable violation of the separation of powers when we look at facts for ourselves. That is to say, while municipalities are entitled to their choice of policies, they are not entitled to their own facts.[8]

---

[8] Contrast this with, for example, Plaintiffs' assertion that they may have a declaration that the City did not fulfill the condition that the Confluence Project would not occur but for the creation and expansion of the TIDs. The statute says "[t]he board may not approve the resolution under this subdivision unless the board's approval contains a positive assertion that, in its judgment, the development described in the documents the board has reviewed under subd. 1. would not occur without the creation of a tax incremental district." Wis. Stat. § 66.1105(4m)(b)2. (emphasis added). Access to TID authority does not depend on whether the project, in fact, would not occur but for the TID. With respect to this precondition, authority depends on the municipality's judgment that it would not occur but for the TID. We traditionally review a municipality's exercise of judgment under common-law certiorari standards. See, e.g., Ottman v. Town of Primrose, 2011 WI 18, ¶¶34-35, 332 Wis. 2d 3, 796 N.W.2d 411 ("Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality . . . ."). We apply the common law certiorari standard where there is no express statutory method of review, and our review is limited to the record compiled by the municipality. Moreover, we may only consider:

> (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was

(continued)

24

¶115 The United States Supreme Court's <u>Baker</u> opinion provides significant guidance in describing the category of non-justiciable questions:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

<u>Baker</u>, 369 U.S. at 217.

¶116 Nothing in this formulation is capable of making Plaintiffs' challenge non-justiciable.  The entire formula rests on an a priori understanding that facts——the stuff of reality——precede and are therefore outside the category of non-justiciable questions.  Thus, for example, reality (here, whether certain property satisfies the statutory definition of blight) has not been (nor could it be) committed to a coordinate branch of government (unless it is entitled to its own facts).  And the statute's definition of blight is so specific there is no lack of discoverable and manageable standards for recognizing where it might exist.  Nor must the judiciary make any policy

---

> such that it might reasonably make the order or determination in question.

<u>Id.</u>

25

determinations as a predicate to identifying blighted properties. And allowing Plaintiffs to assert that there is no blight where the City says there is expresses no disrespect for the City, just disagreement. And so on through all of the Baker factors. Because the existence of a set of facts cannot be contingent on a legislative body's exercise of its discretion or judgment, the court committed an outcome-determinative error in concluding that both subjects and objects fall in the same category for purposes of the justiciability analysis.

¶117 In a terse footnote, the court suggests the key to its opinion is the distinction between legislative and adjudicative facts. Majority op., ¶39 n.20. It also says that we do not understand the distinction, and that this failure accounts for our dissent. Id. Although we get the difference, we do not understand——and the court does not explain——why that means it must conflate subjects and objects. There is no magic to legislative facts——they simply describe the world as perceived by legislative bodies. Municipalities cannot speak (or write) a single fact into existence (or make one disappear). The facts either are, or they are not. And that matters because the legislature conditioned the City's TID authority on whether the TIDs——as a factual matter——encompass the required amount of blight. If it did not matter——that is, if the City can create legislative facts ex nihilo, the truth of which are beyond questioning——then the legislature can never condition a municipality's exercise of authority on a factual predicate. If the court is right, then the predicate can never be anything but

26

a functional nullity because the municipality will always be able to create compliance by speaking the "legislative" facts into existence. That, of course, is not a condition. It is surplusage. We are supposed to avoid that. See, e.g., Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980) ("A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect.").

*

¶118 The factual predicates to the exercise of a municipality's TID authority are not legislative determinations. They are simply facts, the existence of which is as susceptible to determination in the context of the Tax Increment Law as in any other setting. The court erred, profoundly, when it concluded that Counts One and Two are non-justiciable. Our jurisprudential world will be on tilt until we abandon this reality-warping category error.

C. Dismissal of Counts Three and Four

¶119 The court concludes that Count Three insufficiently states a claim because it does not allege facts plausible enough to show TID funds were used to demolish historic buildings. And it concludes that Count Four suffers the same infirmity because Plaintiffs do not allege facts that plausibly show the grants were really paying the developer's property taxes. We disagree.

1. Standard of Review and Applicable Law

¶120 Our review of the sufficiency of a complaint is a question of law reviewed de novo. See Kaloti Enterprises, Inc.

27

v. Kellogg Sales Co., 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205. Wisconsin Stat. § 802.02(1)(a) provides the necessary requirements for a valid complaint:

> (1) Contents of pleadings. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:
>
> (a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.
>
> (b) A demand for judgment for the relief the pleader seeks.

¶121 Wisconsin adopted "notice pleading" "so that legal disputes are resolved on the merits of the case" rather than dismissed based on a technicality. See Hlavinka v. Blunt, Ellis & Loewi, Inc., 174 Wis. 2d 381, 403, 497 N.W.2d 756 (Ct. App. 1993) (quoting Korkow v. Gen. Cas. Co. of Wis., 117 Wis. 2d 187, 193, 344 N.W.2d 108 (1984)). "The 'notice' pleading rules of the current civil procedure code are intended to facilitate the orderly adjudication of disputes; pleading is not to become a 'game of skill in which one misstep by counsel may be decisive of the outcome.'" Korkow, 117 Wis. 2d at 193 (quoted source omitted).

¶122 When a court is asked to determine whether a complaint states a claim, we accept the facts pled in the complaint as true, as well as "all reasonable inferences that can be drawn from those facts." Hlavinka, 174 Wis. 2d at 403. To be valid, the complaint must give notice sufficient enough "that the

28

defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery." Id. (quoted sources and internal quotation marks omitted). The complaint should be liberally construed in favor of stating a claim and only dismissed when it is clear that there are no conditions under which Plaintiffs could prevail. See Hermann v. Town of Delavan, 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).

## 2. Application

¶123 Plaintiffs' third claim seeks a declaration voiding the City Council's TID resolution because TID funds were unlawfully used to pay for demolition costs of historic buildings in violation of Wis. Stat. § 66.1105(2)(f)1.a.[9] The court agrees that the plain language of Wis. Stat. § 66.1105(2)(f)1.a prohibits using TID money to pay for the demolition of a historic building. See majority op., ¶53. Nonetheless, the court concludes that Count Three failed to

---

[9] Wisconsin Stat. § 66.1105(2)(f)1.a provides:

"Project costs" include:

a. Capital costs including, but not limited to, the actual costs of the construction of public works or improvements, new buildings, structures, and fixtures; the demolition, alteration, remodeling, repair or reconstruction of existing buildings, structures and fixtures other than the demolition of listed properties as defined in s. 44.31 (4); the acquisition of equipment to service the district; the removal or containment of, or the restoration of soil or groundwater affected by, environmental pollution; and the clearing and grading of land.

29

state a claim for declaratory relief because it did not use the right words. According to the court, (1) the Complaint "did not allege facts which establish that the developer in fact used the money from the cash grant to pay for the demolition of" the historic buildings; and (2) the Complaint did not "allege facts which demonstrate that the developer was likely to do so"; and (3) the Plaintiffs allege only that "'there is . . . no way to assure' that the developer did not use the cash grants to pay for the demolition of historic buildings." Id., ¶55.

¶124 The court is mistaken because it did not account for what everyone knows: Money is fungible. The Complaint alleges that historic buildings on the National Register of Historic Places within the TID district were purchased and demolished by the developer——specifically identifying at least one of those buildings by name, the Kline Department Store, and another by address, "the historic property at 2 South Barstow Street." It alleges the demolition occurred "after the project plans were developed and, upon information and belief, with the understanding that [the developer] would be reimbursed for the costs of development." It further alleges: "A substantial part of the development costs actually incurred by the developer thus includes the costs of demolition as well as the purchase price of the Kline Department Store building and other buildings" protected by statute as historic places. Paragraph 46 of the Complaint alleges the City will pay the developer $10,400,000 in the form of cash grants for project costs, without prohibiting the developer from using that money to purchase or demolish the

30

historic properties. Paragraph 94 alleges "two lump-sum 'contributions' of $2.95 million to the developer" which "may be used by the developer for any project related purpose, including reimbursing the developer for its already-incurred costs. These costs include acquisition and demolition" without prohibiting the developer from using this money "for the costs of demolishing" historic properties. Finally, the Complaint states: "Lump sum reimbursement for already incurred costs can properly be viewed as including any of those costs, including the costs of demolishing historic structures within the Confluence Commercial Historic District."

¶125 Taking these alleged facts as true, as we must, together with any reasonable inference derived therefrom, see Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693, Plaintiffs' claim survives a motion to dismiss. The statute prohibits using TID funds to demolish historic places. The Complaint alleges the developer bought and demolished historic places pursuant to a development agreement under which the City pays millions of dollars in cash grants to the developer for any project-related purpose. In essence, the Complaint asserts the City is unlawfully transferring taxpayer money to the developer in part to cover the developer's costs for demolishing historic buildings; if proven, this would constitute an illegal expenditure of public funds. The Complaint need not track the currency's serial numbers from the TID funds to the wrecking company's bank account.

¶126 The court heightens pleading requirements beyond what the law supports. It dismisses this claim even though the Complaint conveys fair notice of Plaintiffs' grievance and even though the Complaint's factual allegations and reasonably drawn inferences, if true, provide a basis for recovery. If Plaintiffs' claim proceeded, discovery would either prove or disprove Plaintiffs' allegation that the developer used TIF funds to cover demolition costs. If discovery shows Plaintiffs' allegations were correct, Plaintiffs would be entitled to a declaration that the City violated the statute. The court's perplexing dismissal of this claim achieves what notice pleading is supposed to prevent—dismissal on a technicality. The court selectively ignores pivotal words in the Complaint and spurns what is left as insufficient. It suggests that had Plaintiffs simply chosen a few different words, this claim would have survived dismissal. The court's analysis is unsound. The Complaint is sufficient to withstand a motion to dismiss and this claim should have been allowed to proceed to a decision on the merits rather than dismissed at the pleading stage on a specious technicality.

¶127 Plaintiffs' Fourth Count alleges that the cash grants, through which the City pays the developer millions of dollars, violate the Uniformity Clause of the Wisconsin Constitution because the cash grants effectively lower the developer-owners' property taxes. The court's opinion again concludes Plaintiffs' Complaint is factually insufficient. We disagree.

¶128 Plaintiffs' Complaint alleges: (1) the cash grants reimburse the developer-owner "for all or a part of the taxes paid on its property"; (2) "the project plans provide for millions of dollars of incremental TID taxes to be paid directly to the owner of the property"; (3) these payments "function[] as a tax rebate or tax credit"; (4) as a result, the developer-owner is "being taxed at a more favorable rate than an owner of identically-assessed property elsewhere in Eau Claire"; and (5) this arrangement violates the Uniformity Clause.

¶129 As noted, in reviewing a sufficiency of the complaint challenge, we accept all of its asserted facts and reasonably drawn inferences as true. We analyze any legal assertions independently. Plaintiffs' Complaint gives fair notice that Plaintiffs seek a declaration regarding the constitutionality of the cash grant part of the TIF statute. The Complaint alleges that the cash grants operate as a tax rebate that in effect lowers the developer's taxes, making the tax rate paid by the developer more favorable than the rate paid by other taxpayers. The facts alleged are sufficient to withstand a motion to dismiss. The court errs by concluding otherwise, which prevented the court from taking the next step of reviewing the legal basis for the claim. If the facts alleged are true, and if the legal premises are correct, Plaintiffs could receive the relief they seek: a declaration that the cash grants violate the Uniformity Clause. Accordingly, the court errs in prematurely disposing of this claim on the narrow basis that the Complaint insufficiently pleads adequate facts to support a

33

Uniformity Clause claim. Although the claim suffers no fact-related pleading inadequacy, it nonetheless fails to state a claim for the reasons we explain below.

### D. Constitutionality of TIF Cash Grants

¶130 The court's rejection of Plaintiffs' constitutional challenge to the cash grants based on purportedly insufficient factual allegations in the Complaint is particularly puzzling because resolving the issue of whether the cash grants violate the Uniformity Clause does not depend on factual findings or require discovery.[10] Rather, whether tax policy implicates the Uniformity Clause presents a legal question, which is ripe for resolution by this court. A statute's constitutionality presents an issue of law, which we review de novo. State v. Pittman, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993).

¶131 Plaintiffs make an "as-applied" challenge.[11] Although statutes are generally presumed constitutional, when the challenge is not to the statute itself, but to its application, no presumption exists. Soc'y Ins. v. LIRC, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385 ("While we presume a statute is constitutional, we do not presume that the State applies

---

[10] We address only Plaintiffs' constitutional challenge under the Uniformity Clause. We cannot decide its constitutional challenge based on the public purpose doctrine because that analysis depends upon the blight findings.

[11] We acknowledge the parties' dispute as to whether the challenge is a facial or an as-applied challenge. Like the majority, we analyze it as an as-applied challenge.

statutes in a constitutional manner.")[12] Plaintiffs argue that cash grants to a non-tax exempt developer who also owns the property violate the Uniformity Clause. They contend such grants operate as a tax rebate, which effectively lowers the property taxes the developer pays to the City. Accordingly, Plaintiffs do not challenge all cash grants under the TIF law, but only those made to property owners who are subject to taxation.

¶132 The Uniformity Clause of the Wisconsin Constitution guarantees "[t]he rule of taxation shall be uniform." Wis. Const. art. VIII, § 1. Generally speaking, the uniformity clause applies to property taxes, which are "direct taxes on real estate." Columbia Cty. v. Wis. Retirement Fund, 17 Wis. 2d 310, 325, 116 N.W.2d 142 (1962). A Uniformity Clause analysis primarily focuses on "inequality in the assessing or collecting of a tax." State ex rel. Van Dyke v. Cary, 181 Wis. 564, 572, 191 N.W. 546 (1923). When taxes are collected or assessed unequally, the Uniformity Clause is implicated. In Gottlieb v. Milwaukee, 33 Wis. 2d 408, 425-32, 147 N.W.2d 633 (1967), this court held a tax law that "partially exempt[s] particular tax property" violated the Uniformity Clause. The tax law in Gottlieb gave decades-long tax exemptions to developers who

---

[12] A facial challenge to a statute alleges that the statute is unconstitutional on its face——that it is unconstitutional in every circumstance. State v. Smith, 2010 WI 16, ¶10 n.9, 323 Wis. 2d 377, 780 N.W.2d 90. In contrast, an as-applied challenge asserts that a statute is unconstitutional as it relates to the facts of a particular case or a particular party. Id.

35

agreed to construct or improve substandard properties in exchange for partial freezing of tax assessments. Id. Such an arrangement lowered the tax rate for the developers and resulted in other taxpayers paying a higher and disproportionate share of property taxes, in clear violation of uniformity. Id. at 429.

¶133 The statute Plaintiffs challenge here does not involve a tax freeze or a tax exemption. The developer-owner in the matter before us is assessed uniformly with other taxpayers and fully pays property taxes on that assessment. Plaintiffs' constitutional challenge targets municipal disbursement of tax revenues after collection rather than the collection itself. Disbursement of funds generally survives challenges under the Uniformity Clause. In an early dispute over a surtax imposed to fund a teachers' retirement fund, this court identified "a substantial distinction between an inequality in the assessing or collecting of a tax and inequality in the disbursing of its proceeds among those who contributed," concluding that "while the former may invalidate the tax, the latter does not . . . ." State ex rel. Van Dyke, 181 Wis. at 572. "TIF departs from uniformity only with respect to spending," which is significant because state courts hold that "state constitutional uniformity requirements appl[y] only to tax assessment and tax rates, not spending." Richard Briffault, The Most Popular Tool: Tax Incremental Financing and the Political Economy of Local Government, 77 U. Chi. L. Rev. 65, 75 & n.54 (2003) (citing state court opinions from Indiana, Illinois, Colorado,

36

Tennessee, Utah, and Iowa upholding TIF under their respective uniformity clauses).

¶134 The constitutional requirement of uniform taxation does extend, in some circumstances, to the manner of fund disbursement. See State ex rel. La Follette v. Torphy, 85 Wis. 2d 94, 107, 108, 270 N.W.2d 187 (1978). While uniformity does not extend to disbursement of tax revenues when paid to counties and municipalities for use on government and public improvements, id. at 107, when a tax statute authorizes payment to an individual taxpayer, the Uniformity Clause applies if the effect of the statute imposes an unequal tax burden. Id. at 108-110. "The uniformity clause is intended to protect the citizen against unequal and unjust taxation." Id. at 198. In Torphy, this court held the tax law giving tax credits to residential property owners who elected to make "building and garage improvements which result in increased property tax assessments" had the effect of imposing an unequal tax burden on homeowners with the same assessed valuations and therefore violated the Uniformity Clause. Id. at 98, 111.

¶135 Plaintiffs here allege that the TIF cash grants violate the Uniformity Clause because, like the tax credits in Torphy, they have the effect of lowering the developer's tax rate, rendering the rate unequal among taxpayers. The dispositive question then is whether the cash grants act as a tax rebate, credit, or exemption that has the effect of imposing an unequal tax burden upon other Eau Claire taxpayers. We

37

conclude that the TIF cash grants do not have that effect and therefore do not violate the Uniformity Clause.

¶136 This court has already rejected a facial and as-applied constitutional challenge to the TIF statute in Sigma Tau, 93 Wis. 2d at 412. Sigma Tau determined:

> With respect to the question of uniformity of taxation among individual taxpayers, the Tax Increment Law is clearly distinguishable, both in form and effect, from the tax provisions struck down by the court in Gottlieb and in Torphy. In both of those cases the court based its conclusion that the provisions were unconstitutional upon its finding that taxpayers owning equally valuable property were required to pay disproportionate amounts of taxes.

> Under tax increment financing, however, there is no such disproportionate impact upon taxpayers within the same territorial boundaries of the unit imposing the tax. All taxpayers . . . continue to be taxed at a uniform rate based upon valuations uniformly arrived at. No taxpayer or group of taxpayers is being singled out for preferential treatment either in the form of an exemption from taxation or a tax credit. Thus, we conclude, taxation under tax incremental financing is uniform.

Id. at 412.

¶137 Plaintiffs contend the cash grant provision of the TIF statute did not exist at the time Sigma Tau declared the TIF law constitutional. The City disputes this, arguing cash grants have always been a part of the TIF framework. The State, in an amicus brief, agrees: "'Cash grants' to private developers have always been part of the definition of 'eligible project costs' under Wisconsin's TIF law." It is not necessary to resolve this dispute in reaching our conclusion that the TIF cash grants do not violate the Uniformity Clause.

38

¶138 The purpose of the TIF law is "to provide a mechanism for cities to finance projects commenced" under redevelopment statutes or to combat blighted areas. Id. at 403. Wisconsin Stat. § 66.1105(2)(f)2.d allows the City to give cash grants to developers if they "signed a development agreement with the city."[13] The cash grants are not a tax rebate, credit, or exemption. They are payments pursuant to an agreement to engage in redevelopment projects. The cash grants are not linked to future property tax payments, do not give the developer a property tax break, and do not operate as a tax refund. The grants do not have the effect of creating an unequal tax burden on similarly situated taxpayers. They do not lower the developer's tax burden or require other taxpayers to pay more than their fair share. Both the developer and other taxpayers are taxed at the same rate based on the equalized value of their property. Thus, the cash grants do not apportion the tax burden unevenly. The City effectively pays developers to undertake a project it would otherwise plan, manage, and pay for itself, if it had the ability to do so. The City pays for development services using revenues the project itself will generate. See Monroe WaterWorks Co. v. City of Monroe, 110 Wis. 11, 12-13, 85 N.W. 685 (1901) (concluding City's contract agreeing to pay for

---

[13] Wisconsin Stat. § 1105(2)(f)2.d provides as material: " . . . none of the following may be included as project costs for any tax incremental district . . . [c]ash grants made by the city to owners, lessees, or developers of land that is located within the tax incremental district unless the grant recipient has signed a development agreement with the city . . . ."

water services is not unlawful grant of immunity from taxes when "the sum so stipulated to be paid is a fair and just allowance to compensate for the actual value of the services to be rendered, and that the stipulation is bona fide, and not in the nature of an evasion of the law against exemption from taxes."). The developer uses the grants to defray the costs of economic development, not to lower or offset property tax payments.

¶139 The TIF cash grants do not alter the uniformity of tax payments among taxpayers or impose an unequal tax burden. They do not impose on other taxpayers a disproportionate amount of taxes like the tax laws found unconstitutional in Gottlieb and Torphy. Accordingly, we conclude the TIF cash grants do not violate the Uniformity Clause.

### III. CONCLUSION

¶140 Plaintiffs have standing in this matter and the law permits them to seek both declaratory judgment and certiorari review. Plaintiffs' Complaint alleges sufficient facts to withstand a motion to dismiss on each of its claims. The TIF cash grants do not have the effect of imposing an unequal tax burden; therefore, the TIF statute, as applied to developer-owners receiving TIF grants, comports with the Uniformity Clause of the Wisconsin Constitution, requiring dismissal of Count 4.

¶141 The court says Plaintiffs' claims must be dismissed because "a court cannot issue a declaration regarding the wisdom of a legislative determination." Majority op., ¶40. But it says so only because it believes facts are contingent on municipal policy choices, a paradigm that is untenable,

unworkable, and unintelligible. Consequently, the court abdicated the judicial duty to decide whether a municipal body properly applied the law. Because the court jettisons Plaintiffs' cause of action without basis, we respectfully dissent.